THOMAS ET AL. *v.* CITY OF INDIANAPOLIS ET AL.

LANDEMEIER ET AL. *v.* CITY OF INDIANAPOLIS.

MOSEMAN ET AL. *v.* CITY OF INDIANAPOLIS.

DILLON ET AL. *v.* CITY OF INDIANAPOLIS.

[Nos. 23,738, 24,070, 24,071, 24,072.    Filed December 5, 1924.]

1.  MASTER AND SERVANT.—*Interfering with Employees.*—*"Picketing".*—*When Lawful.*—*Injunction.*—In the absence of legislation on the subject, peaceful "picketing" is not unlawful, but where it is accompanied by force, intimidation or coercion, it is unlawful, and will be enjoined by a court in the exercise of its equitable powers.    p. 444.

2.  MUNICIPAL CORPORATIONS.—*Ordinances.*—*Anti-Picketing.*—*Validity.*—*Statute.*—Under the authority conferred upon city councils by §8655, cl. 47, Burns 1914, to pass ordinances to preserve peace and good order, a council has the power to pass an ordinance prohibiting "picketing" in labor disputes when accompanied by violence, threats, intimidation and coercion.    p. 445.

3.  MASTER AND SERVANT.—*Labor Disturbances.*—*"Picketing" Defined.*—"Picketing" has been defined as the maintenance of an organized espionage on the works or place of business of an employer and those going to and from them.    p. 446.

4.  MUNICIPAL CORPORATIONS.—*Ordinances.*—*"Anti-Picketing".*—*Validity.*—*Statute.*—An ordinance prohibiting "picketing" generally, whether accompanied by violence, threats or intimidation or not, is not an unreasonable exercise of the power given to city councils by §8655, cl. 47, Burns 1914 to enact ordinances to preserve peace and good order.    p. 447.

5.  CONSTITUTIONAL LAW.—*Rights of Individuals Subservient to Public Welfare.*—It is a fundamental principle that the rights of individuals are subservient to the welfare of the general public.    p. 449.

6.  CONSTITUTIONAL LAW.—*Free Speech.*—*Peaceable Assemblage.*—*Right to Use Public Streets.*—The rights of a person to free speech, peaceable assemblage, the use of public streets, and other similar rights and privileges, are all subject to such reasonable regulations as the governing body of the government may make for the general good.    p. 450.

7.  CONSTITUTIONAL LAW.—*Ordinance Prohibiting "Picketing".*—*Statute.*—A city ordinance prohibiting "picketing" does not infringe upon the constitutional rights of citizens to free speech, peaceable assemblage, or the use of the public streets, deprive them of their liberty without due process of law, nor violate §1 of the Bill of Rights of the State Constitution.    p. 450.

8. CONSTITUTIONAL LAW.—*Ordinance Prohibiting "Picketing".—Not Class Legislation.—Statute.*—A city ordinance prohibiting "picketing", passed pursuant to the authority given to city councils by §8655, cl. 47, Burns 1914, to preserve peace and good order, is not class legislation.    p. 450.

9. MUNICIPAL CORPORATIONS.—*Ordinance Prohibiting "Picketing".—Does not Prevent Employees from Striking.*—A city ordinance prohibiting "picketing" does not prevent employees from striking or from presenting their side of a labor controversy to others.    p. 451.

10. CRIMINAL LAW.—*Ordinance Prohibiting "Picketing".—Conflict with Criminal Statutes.—Statutes.*—A city ordinance prohibiting "picketing", passed pursuant to the authority given city councils by §8655, cl. 47, Burns 1914, to preserve peace and good order, is not invalid under §1946 Burns 1914, Acts 1905 p. 584, §78, prohibiting the enactment of ordinances prescribing punishment for the violation thereof when such violation constitutes a criminal offense under a statute.    p. 451.

11. CRIMINAL LAW.—*Criminal Offense.—Violating City Ordinance.—Punishment May be for Both.*—If a violation of a city ordinance constitutes a criminal offense under the state law, the violator may be prosecuted for both.    p. 451.

12. CRIMINAL LAW.—*Several Offenses Growing out of Same Transaction.*—Where more than one criminal offense grows out of the same facts, and no one of such offenses is necessarily included in the other, there may be a conviction on each offense.    p. 451.

No. 23,738 from the Johnson Circuit Court; *Fremont Miller,* Judge.

Nos. 24,070, 24,071 and 24,072 from Marion Circuit Court (34,348, 34,349, 34,350) ; *Harry O. Chamberlain,* Judge.

Cause No. 23,738 was a suit by John R. Thomas and others against the City of Indianapolis and others. From a judgment for defendants, the plaintiffs appeal. *Affirmed.*

Causes Nos. 24,070, 24,071 and 24,072 were prosecutions by the City of Indianapolis against the several defendants for the violation of a city ordinance. From judgments of conviction, the respective defendants appealed. *Affirmed.*

*Joseph O. Carson, William H. Faust, J. Herbert Hartman* and *M. L. Clawson,* for appellants.

*James M. Ogden, William J. Bailey, Samuel Ashby, Thomas D. Stevenson, Harry E. Yockey, Dixon H. Bynum* and *Miller, Barnett & Barnett,* for appellees.

GAUSE, J.—All of the above cases were consolidated for purposes of briefing in this court, and may be disposed of by one opinion.

Cause No. 23,738 is an action in which appellants sought to enjoin the appellees, the city of Indianapolis, the mayor of said city, the chief of police, and certain other officers from enforcing against appellants and others a certain ordinance of said city known as an "Anti-Picketing" ordinance.

The other causes are appeals from convictions for violations of said ordinance.

The question presented in all of said cases is as to the validity of said ordinance.

The ordinance, omitting the title, is as follows:

"Be it ordained by the Common Council of the City of Indianapolis, Indiana:

"Section 1. Whoever shall watch, beset or picket the premises of another, where any person is employed, or any approach thereto, or any place or approach thereto, where such employe lodges or resides, for the purposes of inducing any such employe, by compulsion, threats, coercion, intimidation, or by any act of violence, or by putting such employe in fear, to quit his or her employment or to refrain from seeking or freely entering into employment, shall, upon conviction thereof, be fined in any sum not less than Ten Dollars ($10.00), nor more than Three Hundred Dollars ($300.00), to which may be added imprisonment not exceeding sixty (60) days.

"Section 2. Whoever shall watch, beset or picket the premises of another, or any approach thereto for the purpose of inducing others to refrain from entering such premises, or from

patronizing, transacting business with or negotiating with the owner or occupant of such premises shall, upon conviction thereof, be fined in any sum not less than Ten Dollars ($10.00), nor more than Three Hundred Dollars ($300.00) to which may be added imprisonment not exceeding sixty (60) days.

"Section 3. Whoever, in association or agreement with one or more persons, shall assemble, congregate or meet together in the vicinity of any premises where other persons are employed or upon the streets, approaches or places adjacent thereto, for the purpose of inducing any such employe, by compulsion, threats, coercion, intimidation, or by any act of violence or by putting such employe in fear, to quit his or her employment therein or to refrain from seeking or freely entering into employment therein, shall, upon conviction thereof, be fined in any sum not less than Ten Dollars $10.00), nor more than Three Hundred Dollars ($300.00), to which may be added imprisonment not exceeding sixty (60) days.

"Section 4. Whoever, in association or agreement with one or more persons, shall assemble, congregate or meet together in the vicinity of the premises of another, or upon the streets, approaches or places adjacent thereto, for the purpose of inducing others to refrain from entering such premises or from patronizing, transacting business with or negotiating with the owner or occupant thereof, of such premises, shall, upon conviction thereof, be fined in any sum not less than Ten Dollars ($10.00), nor more than Three Hundred Dollars ($300.00), to which may be added imprisonment not exceeding sixty (60) days.

"Section 5. Whoever, for the purpose of compelling, coercing, or inducing any persons to quit his or her employment or to refrain from seeking or freely entering into employment, shall utter to or within the hearing of such person or persons, any derogatory or opprobrious or indecent epithets or languages or gestures or threats of violence, shall, upon conviction thereof, be fined in any sum not less than Ten Dollars ($10.00), nor more than Three Hundred Dollars ($300.00), to which may be added imprisonment not exceeding sixty (60) days."

The first objection appellants make to the ordinance in question is that the city council had no authority, under the city charter, to pass the same.

Clause 47 of §8655 Burns 1914, Acts 1905 p. 219, provides that city councils shall have the power to pass ordinances "To preserve peace and good order, * * *, quell riots and disperse disorderly assemblages. * * *."

Appellants assert that this ordinance is unreasonable and oppressive and not within the power granted by the above statute. They take the position that picketing is not *per se* unlawful, and that this general grant of power in the statute is not sufficient to authorize such an ordinance.

Counsel refer to the case of *Karges Furniture Co.* v. *Amalgamated, etc., Union* (1905), 165 Ind. 421, 2 L. R. A. (N. S.) 788, 6 Ann. Cas. 829, in which it was held that the mere act of picketing, in a labor dispute, was not within itself unlawful, if not accompanied by unlawful means. It should be borne in mind that the court was, in that case, speaking of what was lawful in the absence of any legislation upon the subject, and no legislative action upon the subject was considered.

Although the decisions of the courts of this country are not in accord on the question, the majority hold that, in the absence of any legislation upon the subject, so-called "peaceful picketing" is not unlawful, but that where it is accompanied by force, intimidation or coercion, it is unlawful and will be enjoined by a court in the exercise of its equitable powers. Such was the holding in the Karges Furniture Co. case, *supra.* See, also, note to *In re Langell* (1914), 50 L. R. A. (N. S.) 412; annotation in 6 A. L. R. p. 929.

As to those sections of this ordinance which prohibit the resort to compulsion, threats, coercion, intimidation,

or any act of violence, attention is called to the fact that the courts have unanimously recognized that picketing, where such means are used, is wrong *per se* and will be enjoined. As was said by this court in the case above cited, "Under no circumstances have pickets the right to employ force, menaces, or intimidation of any kind in their efforts to induce nonstriking workmen to quit, or to prevent those about to take the strikers' places to refrain from doing so; neither have they the right, as pickets or otherwise, to assemble about the working place in such numbers or in such manner as to impress workmen employed, or contemplating employment, with fear and intimidation." See, also, cases cited in the above case.

Under the authority to pass ordinances to preserve peace and good order, etc., a city council would certainly possess the power to pass an ordinance the effect

2. of which would be to prevent the commission of acts which are universally condemned as wrong and which inevitably lead to disorder and a disturbance of the peace of the public.

A more serious question is presented as to the validity of sections two and four of said ordinance. Section two makes all picketing of the premises, or the approaches to the premises, of another unlawful, if for the purpose of inducing others to refrain from entering such premises or from patronizing, transacting business with, or negotiating with, the owner or occupant of such premises. Section four makes it unlawful for two or more persons to assemble together in the neighborhood of the premises of another for any of the purposes set out in section two.

It will be observed that, in order to violate either of these sections, it is not necessary that any force or violence be used, or that there be any overt acts committed tending towards intimidation, other than the act of

picketing such premises for the purpose of preventing others from patronizing, transacting business with or negotiating with the owner or occupant.

·The word "picketing," as used in this ordinance, has a well defined meaning. It has been defined as the maintenance of an organized espionage upon the works or places of business as an employer and those going to and from them, and it has been remarked that the word "picket" is borrowed from the nomenclature of warfare, and is strongly suggestive of a hostile attitude toward the individual or corporation against whom a labor organization has a grievance. 16 R. C. L. p. 453, and cases cited. Another definition of picketing that has often been approved is given in Black's Law Dictionary, as follows: "Picketing by members of a trade union on strike, consists in posting members at all the approaches to the works struck against, for the purpose of observing and reporting the workmen going to or coming from the works, and of using such influence as may be in their power to prevent the workmen from accepting work there."

Although, as heretofore stated, a majority of the courts have recognized the rights of striking employees to maintain pickets to beset the premises of the employer where no unlawful means were used and where there was no legislation upon the subject, yet many courts whose opinions are entitled to great weight have taken the position that all picketing, as that term is used in modern practice, is unlawful and should be restrained.   To this effect see, *Barnes & Co.* v. *Typographical Union* (1908), 232 Ill. 424, 83 N. E. 940, 14 L. R. A. (N. S.) 1018, 13 Ann. Cas. 54; *Beck* v. *Railway Teamsters', etc., Union* (1898), 118 Mich. 497, 77 N. W. 13, 42 L. R. A. 407, 74 Am. St. 421; *Otis Steel Co.* v. *Local Union, etc.* (1901), 110 Fed. 698; *Atchison, etc., R. Co.* v. *Gee* (1905), 139 Fed. 582;

*Jonas Glass Co.* v. *Glass Bottle Blowers' Assn.* (1907), 72 N. J. Eq. 653, 66 Atl. 953; *Pierce* v. *Stablemen's Union* (1909), 156 Cal. 70, 103 Pac. 324; *Rosenberg* v. *Retail Clerks' Assn.* (1918), 39 Cal. App. 67, 177 Pac. 864; *Local Union* v. *Stathakis* (1918), 135 Ark. 86, 205 S. W. 450, 6 A. L. R. 894; *St. Germain* v. *Bakery, etc., Union* (1917), 97 Wash. 282, 166 Pac. 665, L. R. A. 1917F 824.

The courts, in the cases last cited, assert generally that there can be no such thing as peaceful picketing and that no matter what the declared intention of the persons so engaged may be, the inevitable result is to create turmoil, disturbances and breaches of the peace. It is probable that the city council which passed the ordinance in question took the latter view and believed that all picketing inimical to the peace and good order of the public, and that the public welfare would best be subserved by prohibiting all picketing in the manner described in the ordinance. If we consider the results that generally follow the placing of pickets near to the premises of one against whom a strike or boycott is being conducted, it cannot be said that such an ordinance is unreasonable. Although the person or persons on picket duty may not, by word or gesture, make any threat or use any force, we all know that in most of such cases, the very presence of the pickets is apt to give rise to contentions and arguments that often result in bloodshed and riots. It is not an unreasonable exercise of the power to preserve peace and good order, for the council to prevent that which so often disturbs the peace and destroys good order. Laws and ordinances of the same general purport as the one here involved have been upheld in the following cases: *Hardie-Tynes Mfg. Co.* v. *Cruse* (1914), 189 Ala. 66, 66 So. 657; *Ex parte Tom O. Stout* (1917), 82 Tex. Cr. Rep. 183, 198 S. W. 967, L. R. A.

1918C 277; *In re Williams* (1910), 158 Cal. 550, 111 Pac. 1035.

In the case of *Hardie-Tynes Mfg. Co.* v. *Cruse, supra,* the Supreme Court of Alabama, in considering a statute which, in effect, was similar to the ordinance in question and which was held to be valid, used the following language: "Perhaps our Legislature has taken the view, adopted by some of the courts, that in actual practice there is and can be no such thing as peaceful picketing or peaceful persuasion. Certainly this is the effect of our statutes."

Appellants assert that the ordinance in question is violative of many provisions of the state and federal Constitutions.

In this connection, appellants make the following contentions: That it violates the Fourteenth Amendment to the Constitution, in that it abridges the privileges and immunities of appellants as citizens, by denying them the "inalienable right of going in and along the streets of the City of Indianapolis, dedicated to the citizens of the city, state and the United States"; that it deprives them of their liberty without due process of law, in that it provides penalties for lawful acts guaranteed by the Constitution; that it only affects one class of citizens, doing one thing; that it violates the first section of the Bill of Rights of our State Constitution declaring that all men are created equal and that among the inalienable rights are life, liberty and the pursuit of happiness; that it violates the section of the State Constitution guaranteeing the right of free speech, etc.; that it violates the section of the State Constitution which provides that the General Assembly shall not grant to any citizen or class of citizens privileges or immunities, which, upon the same terms, shall not equally belong to all; that it violates the provision guaranteeing the right of peaceable assemblage; that it is

a local and special law; that it violates the Thirteenth Amendment to the federal Constitution, which prohibits slavery or involuntary servitude.

Most of these contentions of appellants rest upon the same argument and which would seem to be founded upon the false premise that any regulation of society which is made for the general good is invalid if it prohibits a person from doing what he would otherwise have a right to do. At least most of their argument would apply to practically all regulatory laws and ordinances which have been passed under the police power, to promote the public peace, safety and welfare.

That the rights of the individual are subservient to the welfare of the general public is uniformly recognized by the courts. As was said by the Supreme Court of the United States, in *Jacobson* v. *Massachusetts* (1904), 197 U. S. 11, 25 Sup. Ct. 358, 49 L. Ed. 643, 3 Ann. Cas. 765: "This court has more than once recognized it as a fundamental principle that, 'persons and property are subjected to all kinds of restraints and burdens, in order to secure the general comfort, health, and prosperity of the State; of the perfect right of the legislature to do which no question ever was, or upon acknowledged general principles ever can be, made, so far as natural persons are concerned.' "

And further, in the same opinion, the court reaffirmed the following principle declared in former cases: "The possession and enjoyment of all rights are subject to such reasonable conditions as may be deemed by the governing authority of the country essential to the safety, health, peace, good order, and morals of the community. Even liberty itself, the greatest of all rights, is not unrestricted license to act according to one's own will. It is only freedom from restraint under

conditions essential to the equal enjoyment of the same right by others.    It is then liberty regulated by law."

In the case of *Watters* v. *City of Indianapolis* (1922), 191 Ind. 671, 134 N. E. 482, this court had under consideration the validity of an ordinance of said city which prohibited the carrying of banners, placards, etc., upon the public streets.    There the argument was advanced that many of appellant's constitutional rights were invaded because he was prohibited from using the public streets for such purposes.    (In that case, appellant walked back and forth in front of a barber shop and wore a shirt bearing the inscription, "Barber Shop Unfair To Organized Labor.")    In disposing of the constitutional objections urged, the court said:    "Nor is he denied the right of 'free interchange of thought and opinion,' or 'the right to speak, write or print freely.' He may hire a hall or print a paper.    But this does not mean that he may do as he pleases on a public street, which is kept by all the people for use under such restrictions that, as near as possible, all may enjoy it."

The rights which appellants have and assert in this case, such as the right to free speech, peaceable assemblage, and the right to use the public streets, as well as the other rights and privileges urged by appellants, are all subject to such reasonable regulations as the governing body of the government may make for the general good, and, as we deem the ordinance in question to be reasonable and one within the power of the council to adopt, it does not infringe upon any of the constitutional rights of appellants.

The ordinance does not apply to one class of citizens only, but to all citizens alike.    If it is only a part of the citizens who desire to do the acts prohibited, that does not make it class legislation; if it did, then many of our criminal statutes would be class

legislation, because it is only a part of the citizens who are deterred by the law from committing the acts prescribed, for a large part of the citizens have no desire to do the acts prohibited, but it cannot, for this reason, be said that such laws are special or class legislation.

This ordinance does not prevent employees from striking, nor does it prevent them from presenting their side of the controversy with their employer to 9. others. It prohibits some acts that are inherently wrong and other acts, which are not wrong within themselves, are regulated and only prohibited from being committed under such circumstances and in such places as may result in public disorder and cause breaches of the peace.

Appellants further contend that the ordinance makes acts an offense which are already offenses by statute and that therefore by virtue of §1946 Burns 10-12. 1914, Acts 1905 p. 584, §78, the ordinance is invalid. Appellants refer to many criminal statutes which they claim cover the same acts as the ordinance, but put particular emphasis upon the statutes defining assault, assault and battery, criminal provocation, and making a false and slanderous statement regarding a person which injures or tends to injure him in name, character, etc. Appellants' contentions are not well founded. It is true that a person, in violating this ordinance, might, at the same time, violate one or more of the statutes referred to, but a violation of the ordinance does not necessarily require a violation of a statute. Neither is it true that the act prohibited by the ordinance is prohibited by any statute. It is the act of picketing under certain conditions and in certain places that is prohibited. If a person in doing this does, at the same time, commit an

assault and battery or other statutory crimes, it does not mean that the ordinance and statute conflict or cover the same act. It would be just as logical to say that a person could not, in the same transaction, be guilty of two or more crimes, yet the instances are many of more than one crime being committed at the same time and the person perpetrating them is properly punished for each of them. As we have said, a person might, in violating this ordinance, violate a statute, but he does not necessarily do so, and if he does violate the ordinance and, in the same transaction, violates a state law, he may be prosecuted for both. The principle governing this question is the same as where the question is as to the right to convict for several offenses growing out of the same transaction, and the great weight of authority is that there may be more than one conviction where there is more than one offense growing out of the same facts, and where neither of such offenses is necessarily included in the other. This is the rule followed in this state. *State* v. *Elder* (1879), 65 Ind. 282, 32 Am. St. 69; *State* v. *Reed* (1907), 168 Ind. 588. See, also, *Hughes* v. *Commonwealth* (1909), 131 Ky. 502, 115 S. W. 744, 31 L. R. A. (N. S.) 693, and note to last citation.

The act of picketing in violation of the ordinance does not necessarily involve the commission of any other crime; neither does the commission of any of the statutory crimes referred to by appellants necessarily involve a violation of this ordinance.

The ordinance in question being valid, it follows that the court below committed no error in dissolving the temporary restraining order issued in cause No. 23,738; nor in sustaining demurrers to each paragraph of complaint, since appellants were not entitled to the relief asked.

The evidence in the other cases, for violating the

ordinance, is not set out in the briefs, so no question is raised as to its sufficiency to sustain the charges.

The judgments in each of the above entitled causes are affirmed.

Ewbank, J., not participating.