CITY OF RENO, a Municipal Corporation, Petitioner, v. THE SECOND JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, in and for the County of Washoe, WILLIAM McKNIGHT, Judge of Said Court, and CHARLES REEL and ALVIN RAE, Respondents.

No. 3245

November 21, 1939.                    95 P. (2d) 994.

*Douglas A. Busey*, City Attorney, for Petitioner:

*Lloyd V. Smith,* for Respondents:

420

**OPINION**

By the Court, DUCKER, J.:

This is an original proceeding in certiorari to review a judgment of the Second judicial district court.

Charles Reel and Alvin Rae, who will be hereinafter referred to as respondents, were complained against in the municipal court of the city of Reno, for a violation of its ordinance No. 480. The complaint alleged that on the 29th day of June 1937, at Reno, in the county of Washoe, State of Nevada, they "did watch, beset, and

picket the premises of Berg & Hansen, Inc., a Nevada corporation, said premises being situated at 315 East street in said city, county and state, and the approaches thereto, for the purpose of inducing others to refrain from entering such premises, and from patronizing, transacting business with and negotiating with the said owner, Berg & Hansen, Inc., and Lindley & Co., occupant of such premises."

In a second count it was alleged: "That at said time and place the said defendants, in association and agreement with Charles Rowan, H. A. Anderson, and John Ferrari, did assemble, congregate and meet together in the vicinity of the premises being situated at 315 East street in said city, county and state, and upon the streets, approaches, and places adjacent thereto, for the purpose of inducing others to refrain from entering such premises and from patronizing, transacting business with and negotiating with the said owner thereof, Berg & Hansen, Inc., and Lindley & Co., occupant of such premises."

Ordinance 480, omitting title, reads:

"Section 1. Whoever shall watch, beset or picket the premises of another, where any person is employed, or any approach thereto, or any place or approach thereto, where such employee lodges or resides, for the purpose of inducing any such employee, by compulsion, threats, coercion, intimidation, or by any act of violence, or by putting such employee in fear, to quit his or her employment or to refrain from seeking or freely entering into employment, shall, upon conviction thereof, be fined in any sum not less than Ten Dollars, ($10.00), nor more than Three Hundred ($300.00) Dollars to which may be added imprisonment not exceeding sixty (60) days in the City Jail.

"Section 2. Whoever shall watch, beset or picket the premises of another, or any approach thereto for the purpose of inducing others to refrain from entering such premises, or from patronizing, transacting business with or negotiating with the owner or occupant of

such premises, shall, upon conviction thereof, be fined in any sum not less than Ten ($10.00) Dollars, nor more than Three Hundred ($300.00) Dollars, to which may be added imprisonment not exceeding sixty (60) days in the City Jail.

"Section 3. Whoever, in association or agreement with one or more persons, shall assemble, congregate or meet together in the vicinity of any premises where other persons are employed, or upon the streets, approaches or places adjacent thereto, for the purpose of inducing any such employee, by compulsion, threats, coercion, intimidation or by any act of violence, or by putting such employee in fear, to quit his or her employment therein or to refrain from seeing [seeking] or freely entering into employment therein, shall, upon conviction thereof, be fined in any sum not less than Ten ($10.00) Dollars, nor more than Three Hundred ($300.00) Dollars, to which may be added imprisonment not exceeding sixty (60) days in the City Jail.

"Section 4. Whoever, in association or agreement with one or more persons, shall assemble, congregate, or meet together in the vicinity of the premises of another, or upon the streets, approaches, or places adjacent thereto, for the purpose of inducing others to refrain from entering such premises or from patronizing, transacting business with or negotiating with the owner thereof, of such premises, shall, upon conviction thereof, be fined in any sum not less than Ten ($10.00) Dollars, nor more than Three Hundred ($300.00) Dollars to which may be added imprisonment not exceeding sixty (60) days, in the City Jail.

"Section 5. Whoever, for the purpose of compelling, coercing or inducing any persons to quit his or her employment, or to refrain from seeking or freely entering into employment, shall utter to or within the hearing of such person or persons, any derogatory or approbrious or indecent epithets or language or gestures or threats of violence, shall, upon conviction thereof, be

fined in any sum not less than Ten ($10.00) Dollars, nor more than Three Hundred ($300.00) Dollars, to which may be added imprisonment not exceeding sixty (60) days in the City Jail. * * *"

The remaining part of the ordinance is not involved.

The respondents were tried and found guilty in the municipal court and a fine of $10 was assessed to each. They appealed to said district court and the case was submitted upon an agreed statement of facts. The district court held the ordinance unconstitutional and set aside the judgment of the municipal court. The facts stipulated upon which the case was submitted in the district court, are as follows:

"It is hereby stipulated by and between the respective parties hereto, acting by and through their attorneys, that the facts upon which the above-entitled criminal action is hereby submitted to the Court for its decision, are as follows:

"That Berg & Hansen, Inc., is a Nevada corporation and is the owner of the premises situated at 315 East Street, in Reno, Washoe County, Nevada. That Lindley & Co. is the occupant of said premises. That a large warehouse is situated on the premises and Lindley & Co. conducts a wholesale grocery business at said warehouse; that at least 90% of the merchandise handled by the said Lindley & Co. is purchased outside of the State of Nevada and thereafter brought into Nevada for resale, and that a portion of the merchandise sold by the said Lindley & Co. is sold outside of the State of Nevada. That said warehouse has four large doors in its front on East Street which doors constitute the business entrance to the warehouse and the principal approaches to the warehouse from East Street run to these doors. That groceries and supplies in truck loads are unloaded and loaded at these doors and the trucks engaged in such unloading and loading use the aforesaid approaches to said doors from East Street. That many trucks load and unload at said doors and use said

approaches every day and the drivers of many of said trucks are the agents of persons, and persons patronizing, transacting business with and negotiating with Lindley & Co.:

"That on the 29th day of June, 1937, at about the hour of 9 o'clock A. M. of said day, and for a considerable period of time thereafter, Charles Reel and Alvin Rae walked back and forth along the sidewalk and street and in front of the aforementioned approaches to the side doors, carrying banners upon each of which was written the words 'Lindley & Co., Unfair to Organized Labor.' That their purpose in doing as aforesaid was to induce any and all truck drivers and teamsters carrying groceries and supplies for Lindley & Co., to refrain from entering said premises and from patronizing, transacting and negotiating business with Lindley & Co. That at said time a large number of people gathered and congregated about said premises. That Charles Rowan, Alvin Rae, Charles Reel, H. A. Anderson and John Ferrari were present in the vicinity of said premises at said time and met together upon East Street and upon said approaches to said premises. That their purpose in doing as aforesaid was to induce any and all truck drivers and teamsters carrying groceries or supplies for Lindley & Co., to refrain entering such premises and from patronizing, transacting business with and negotiating with Lindley & Co. That Alvin Rae and Charles Reel did so meet and assemble at said time and said place with Charles Rowan, H. A. Anderson and John Ferrari by agreement. That at a meeting of the teamsters union shortly prior to said June 29th, 1937, said teamsters union by a unanimous vote, instructed defendants, Charles Reel and Alvin Rae, to picket said premises and approaches, at which meeting H. A. Anderson, John Ferrari and Charles Rowan were present and at which meeting said Charles Reel and Alvin Rae agreed with H. A. Anderson, John Ferrari and Charles Rowan to assemble and meet together in the vicinity of said premises for said purpose aforesaid.

"That said Alvin Rae and Charles Reel at said time and place did not make any overt or actual threats and commited no acts constituting overt or actual intimidation, coercion or violence.

"That during all of the time herein mentioned and at said time and place, the employees of Lindley & Co. were not members of any labor unions and were not members of the Teamsters' Union. That Charles Reel, Alvin Rae, Charles Rowan, H. A. Anderson and John Ferrari were not, at any time herein mentioned and at said time and place aforesaid, employees of Lindley & Co.

"That said acts aforesaid resulted from the refusal of Lindley & Co. to sign an agreement that Lindley & Co. would employ as teamsters only members of said union, or retain as teamsters only those of its employees willing to become members of said union. That the aforesaid agreement contained a schedule of union hours and wages. * * *"

It was also stipulated that said ordinance of the city of Reno was adopted from an ordinance of the city of Indianapolis, Indiana.

Petitioner contends that the ordinance is in all respects constitutional and valid and that the district court, in declaring it unconstitutional, acted in excess of jurisdiction.

A preliminary question was raised as to whether the judgment of the district court is reviewable by certiorari. I am of the opinion that it is. Chapman v. Justice Court of Tonopah Tp., 29 Nev. 154, 86 P. 552, 99 P. 1077.

It is alleged in the petition that the district court made no ruling, judgment, or decision based upon the merits of, or facts involved in said matter, but that said decision rested and was based solely upon the finding of the court that said ordinance was unconstitutional and void. As the record before us discloses this to be true the agreed statement of facts will be laid out of consideration, the question before us being whether the

ordinance, as a matter of law, is constitutional. Sections 2 and 4 of said ordinance which respondents were charged with violating prohibit picketing in any form. Respondents contend that the ordinance which forbids such picketing is unconstitutional and void because:

1. It infringes upon the right of personal liberty as guaranteed by our state and federal constitutions.

2. It is an unreasonable and oppressive restriction of freedom of speech.

3. It restricts the right freely to assemble.

■ I am of the opinion that peaceful picketing is a lawful means of labor union activity. This conclusion is induced from the fact, as I understand it, that in peaceful picketing there is an entire absence of fraud, violence, or anything of an intimidating nature. It is characterized by peaceful persuasion for the promotion of a lawful purpose.

The conviction that peaceful picketing for such a purpose is lawful, is strengthened in my mind by the further fact that its lawfulness is sustained by the great weight of modern authority. People v. Harris, 104 Colo. 386, 91 P.(2d) 989, 122 A. L. R. 1034, and cases cited in that opinion. In addition many other cases might be cited to that effect. Among these are: Empire Theatre Co. v. Cloke et al., 53 Mont. 183, 163 P. 107, L. R. A. 1917E, 383; Citizens' Co. v. Ashville Typographical Union, 187 N. C. 42, 121 S. E. 31; Goldfield Consol. Mines Co. v. Goldfield Miners' Union No. 220, C. C., 159 F. 500; Lisse v. Local Union No. 31, 2 Cal.(2d) 312, 41 P.(2d) 314; Ex Parte Lyons, 27 Cal. App.(2d) 293, 81 P.(2d) 190.

Following the case of Exchange Bakery & Restaurant v. Rifkin, 245 N. Y. 260, 157 N. E. 130, cited in People v. Harris, supra, the court of appeals in Busch Jewelry Co., Inc., et al. v. United Retail Employees Union, Local 830 et al., 281 N. Y. 150, 22 N. E.(2d) 320, 321, said:

"Organized labor has the rights of free speech, peaceful picketing and collective bargaining."

The judicial notion, sometimes expressed, that there

can be no such thing as peaceful picketing, is subscribed to by few courts, and repudiated by many. "The doctrine," said the court in George B. Wallace Co. v. International Ass'n of Mechanics, 155 Or. 652, 63 P.(2d) 1090, 1095, "that picketing is necessarily a species of coercion and intimidation is dogma long since discarded." Goldfinger v. Feintuch, 159 Misc. 806, 288 N. Y. S. 855.

The proposed final draft No. 6, Restatement of Torts, Group No. 3, American Law Institute, p. 99, section 24, contains the following concerning picketing:

"(1) As used in this Chapter, 'fair persuasion' means argument, exhortation or entreaty addressed to a person without, (a) threat of physical harm or economic loss, or (b) persistent molestation or harassment, or (c) material and fraudulent misrepresentations."

"(2) Picketing at or near another's place of business for the purpose of persuading third persons, in accordance with the standards stated in subsection (1), to adopt a course of conduct towards his business is a form of fair persuasion of the third persons if access to the place of business is not materially obstructed thereby."

The foregoing paragraphs were finally adopted without change at the 1939 annual meeting of the institute, and will appear as above quoted in the forthcoming bound volume.

In the explanatory notes to said section 24, appearing at pp. 203–204 of said proposed final draft, it is said:

"The case (peaceful picketing as a legitimate form of fair persuasion) has been strongly put in Schuster v. International Association of Machinists, 293 Ill. App. 177, 12 N. E.(2d) [50], 57: 'It has been repeatedly held that where an employer refuses to employ union labor, labor organizations may freely publish in their own official organs and other newspapers, in pamphlets or circulars, or by means of radio, the fact that such employer is unfair to organized labor. Then, why is it not just as lawful for a labor union to make publication

of the employers' unfairness by signs carried peaceably by a member or members of the interested union in the vicinity of the place of business of the employer?

" 'It is a matter of common knowledge that many of our well known industrialists and large employers of labor almost daily condemn in the public press the alleged iniquities of organized labor. * * * There is no legal means available to restrain such publicity. Yet when a labor union in a modest way, and utilizing perhaps the only means available which it can afford, seeks to present by signs carried on the person of one or more of its members the truth concerning an employer who refuses to recognize or deal with the union, it is strenuously urged that the employer is entitled to relief from a court of equity to prohibit the display of such signs in front of his place of business.' "

In Senn v. Tile Layers Protective Union, 222 Wis. 383, 268 N. W. 270, 273, 872, the court in holding the picketing lawful under the state statute had this to say of the lawfulness of picketing in general:

"Courts, though differing as to the allowable scope, pretty generally agree that picketing is a legitimate means of economic coercion, if it is confined to persuasion and is free of molestation or threat of physical injury or annoyance."

It was declared in Bayonne Textile Corp. v. American Federation of Silk Workers, 116 N. J. Eq. 146, 172 A. 551, 559, 92 A. L. R. 1450:

"Picketing is lawful if it does not have an immediate tendency to intimidation of the other party to the controversy, or to obstruct free passage such as the streets afford, consistent with the right of others to enjoy the same privilege. * * *" Citing Keuffel & Esser v. International Ass'n of Machinists, 93 N. J. Eq. 429, 116 A. 9; American Steel Foundries v. Tri-City C. T. Council, 257 U. S. 184, 42 S. Ct. 72, 66 L. Ed. 189, 27 A. L. R. 360; Nann v. Raimist, 255 N. Y. 307, 174 N. E. 690, 73 A. L. R. 669.

"The modern view," continued the court, "is that

picketing is not per se unlawful, and should not be enjoined, if peaceably carried on for a lawful purpose."

In Scofes v. Helmar, 205 Ind. 596, 187 N. E. 662, 664, the court said:

"It is now generally recognized that employees have a legitimate de facto interest in collective action for the purpose of improving their economic situation; and it cannot be questioned seriously that beneficial results to society, as well as to employees individually and as a class, have come from an assertion of the collective economic force of employees. The law recognizes this de facto interest to the extent of an immunity from legal responsiblity for financial loss to employers which results from strikes and picketing, when such strikes and picketing are conducted in a lawful manner. We may evolve eventually agencies that will adequately protect the interests which employees are now required to protect through collective economic force, but 'so long as the economic order is grounded upon a premise of strife between producer and consumer, between labor and capital, the battle should not be rendered one-sided by perpetuating the advantage which society, combined in the guise of capital, enjoys as a result of an accidental oversupply of labor when the power to influence public opinion is denied workmen."

In George B. Wallace Co. v. International Ass'n of Mechanics, 155 Or. 652, 63 P. (2d) 1090, 1095, the court said:

"The great majority of courts, including the United States Supreme Court (American Steel Foundries v. Tri-City Central Trades Council, 257 U. S. 184, 42 S. Ct. 72, 66 L. Ed. 189, 27 A. L. R. 360), however, sustain the right of peaceful picketing. * * * This court has long recognized the right of peaceful picketing when done for a lawful purpose. * * * The mere fact that an employer may sustain loss of business as a result of such picketing does not warrant intervention. It is damnum absque injuria."

The lawfulness of peaceful picketing was declared in

Clark Lunch Co. v. Cleveland Waiters & Beverage Dispensers Local 106, et al. 22 Ohio App. 265, 154 N. E. 362, 364. In the course of its opinion the court said:

"The plaintiff having determined to operate its business as a nonunion concern, and having refused to employ union labor, may not reasonably expect, nor has it the right to expect, the latter's business and support; and, furthermore, it has no legal right to prevent a lawful publicity of its actions in this behalf of union labor. It necessarily follows that, if plaintiff has a legal grievance in this case, it rests only in the method and manner of the distribution of the cards aforesaid. The La France Case, supra [La France Electrical Construction & Supply Co. v. International Brotherhood of Electrical Workers, 108 Ohio St. 61, 140 N. E. 899], and the McCormick Case, supra [McCormick & Fisher v. Local Union No. 216 Hotel and Restaurant Employees, 13 Ohio Cir. Ct. R., N. S., 545], clearly define the line of demarcation between what is lawful and what is not lawful in this respect. If the methods adopted do not intimidate or coerce, and are without violence, they are lawful. When they involve abuse, violence, intimidation, or coercion, they are unlawful. * * * It is shown that the acts complained of are causing the plaintiff a substantial loss in its business and profits. This fact furnishes no basis for judicial interference, for the plaintiff had no vested property right in the business so lost to it. This is so for the reason that, while it had a legal right to determine its course of action, it must be held to have considered in that connection the influence of union labor on the public, and the benefit of its support and patronage. These are factors in the situation it was bound to consider. It chose to reject union labor and to employ non-union labor at lower wages and longer hours of service. It was bound to know that it could not legally prevent publicity in respect to its action. Whatever financial loss it now suffers is therefore due to causes of its own making,

and within its control, which it must be held to have anticipated."

The foregoing expressions are fairly typical of the great weight of judicial opinion that peaceful picketing is lawful.

■ While the net result of better reasoned judicial opinion is to that effect, it is universally held that if picketing goes beyond the allowable area of peaceful persuasion and assumes the form of intimidation, threats of violence, or impedes traffic, or interferes with the free use of property, or involves trespass or fraud, it is unlawful.

Petitioner contends that as the ordinance before us, as adopted, is the ordinance of the city of Indianapolis, the decision in Thomas v. Indianapolis, 195 Ind. 440, 145 N. E. 550, 35 A. L. R. 1194, prior to its adoption here, that it is constitutional, must be the construction given it by this court.

■■ We are referred to several decisions of this court in support of the position. These decisions adhere to the rule that where a statute has received a judicial construction and is afterwards adopted by another state it will be presumed to have been enacted with that construction placed upon it. The presumption is not conclusive; it is, however, very persuasive. Menteberry v. Giacometto, 51 Nev. 7, 267 P. 49. But the rule has no application here. The argument in support of it presumes a doctrine which, if allowed, would substitute the supreme court of Indiana as a tribunal to determine the grave question of whether the ordinance before us transgresses the constitution of Nevada, in the place of the supreme court of this state.

■ Counsel confuses construction, that is, the function of a court to ascertain the scope and meaning of a statute with the duty of determining its validity when laid along side of constitutional guaranties. The rule contended for is applicable only in a case of construction. 14 Am. Juris. 300; Williams v. State, 81 N. H.

341, 125 A. 661, 38 A. L. R. 490; Boyd v. C. C. Ritter Lumber Co., 119 Va. 348, 89 S. E. 273, 275, L. R. A. 1917A, 94.

The contention made by petitioner's counsel was disposed of in Boyd v. C. C. Ritter Lumber Co., supra, in the following explicit language:

"The statute under which this proceeding is had was taken, it seems, from a statute of the state of Kentucky, which was held constitutional and valid by the Court of Appeals of that state prior to the passage of the act under consideration, namely, Chesapeake Stone Co. v. Moreland [126 Ky. 656], 104 S. W. 762, 16 L. R. A. (N.S.) 479; and it is insisted here for the defendant in error that when a constitutional provision is ordained, or a statute enacted by another state, and it is ingrafted into the Constitution or statutes of this state, and prior thereto such constitutional provision or statute had received judicial construction by the courts of such other state, then it is to be presumed that the lawmaking power of this state intended that the constitutional provision or statute should be given the same construction in this state that it was given in the state from which it was taken. This principle of construction, however, applies only to the construction of constitutional provisions and statutes, and has no relation, as the authorities hold, to the question of whether or not a statute is constitutional and valid. In other words, the Legislature, by enacting a statute which has been held constitutional and valid by the courts of another state, cannot deprive the courts of this state of the right to determine for themselves the question of the constitutionality of such statute."

It may be conceded in conformity with counsel's contention that the city council of Reno in adopting the Indianapolis ordinance as its own, intended to adopt it with the stamp of approval by the Indiana supreme court and intended it to be constitutional. But whether it is so in fact is properly the subject of determination by the courts of this state.

■■ Sections 2 and 4 of the ordinance do not seek to merely regulate picketing, as by limiting the number of pickets, specifying the number of paces they must be separated from each other, requiring them to remain on the outer half or other fractional part of the sidewalk, limiting the size of the banner which may be carried, forbidding picketing under circumstances claimed to be unlawful, tortious, or inequitable, or containing other regulations designed to reasonably control picketing. They go beyond regulation. They are a sweeping prohibition of any form of picketing, irrespective of its nature, purpose or number of pickets, and constitute an interdiction of all activities and free speech sought to be exercised in the form of peaceful picketing. The federal constitution guarantees freedom of speech, U. S. C. A. Const. Amend. 1. In the fourteenth amendment it is declared: "nor shall any State deprive any person of life, liberty or property, without due process of law." The due process clause in the fourteenth amendment is a prototype of the due process clause in our constitution. Art. 1, section 8. In Art. 1, section 9, it provides: "Every citizen may freely speak, write and publish its sentiments on all subjects, being responsible for the abuse of that right; and no law shall be passed to restrain or abridge the liberty of speech or of the press." Notwithstanding these guaranties, the exercise of these rights is not absolute. They may be regulated under the police power of the state. Liberty regulated by law is a fundamental of our democratic government. However, neither freedom of speech nor liberty of action may be suppressed under the guise of regulation. They are not subject to the exercise of arbitrary power. Any annoyance or loss of business caused to an employer by lawful picketing does not warrant the exercise of the police power of the state. By the weight of authority loss of business to an employer in such an economic contest is damnum absque injuria. George B. Wallace Co. v. International Ass'n of Mechanics, supra; People v. Harris, supra; Exchange Bakery & Restaurant v. Rifkin,

supra; Senn v. Tile Layers Protective Union, 301 U. S. 468, 57 S. Ct. 857, 863, 81 L. Ed. 1229.

In the New York case it was held [245 N. Y. 260, 157 N. E. 133] : "Resulting injury is incidental and must be endured."

In Senn v. Tile Layers Protective Union, it was said:

"It is true that disclosure of the facts of the labor dispute may be annoying to Senn [employer] even if the method and means employed in giving the publicity [picketing] are inherently unobjectionable. But such annoyance, like that often suffered from publicity in other connections, is not an invasion of the liberty guaranteed by the Constitution. [Citation]. It is true, also, that disclosure of the facts may prevent Senn from securing jobs which he hoped to get. But a hoped-for job is not property guaranteed by the Constitution. And the diversion of it to a competitor is not an invasion of a constitutional right."

■ Such annoyance or loss does not warrant the exercise of the police power of the state, and it is well settled that such inherent power is not available for the protection of an individual or class of individuals, but for the protection of the community. It may not be exercised for private purposes.

As stated by Judge Farrington, speaking for the Court in Goldfield Consol. Mines Co. v. Goldfield Miners' Union No. 220, C. C., 159 F. 500, 515:

"It is too clear to require a citation of authorities that the Legislature has no power to restrict the exercise of a constitutional right, unless the interests of the public, as distinguished from the interests of the individual, or of a class of individuals, demand such restraint. The act so forbidden by the Legislature must be detrimental to the public welfare, and the health, safety, or morals of the community to justify such interference."

■ That the city may, in the exercise of its police power, regulate the methods of publicity as well as the use of the streets, is conceded. Senn v. Tile Layers Protective Union, 301 U. S. 468, 57 S. Ct. 857, 81 L. Ed.

1229. But it cannot, under the cloak of regulation, prohibit such means or such use. It cannot make criminal an innocent act when no interference is had with public health, safety, comfort or welfare. 16 C. J. S., Constitutional Law, sec. 195, p. 564.

The theory on which it is sometimes said that the government, either by the legislature or a municipality, may enact valid legislation against all picketing, is that this means of publicity, however it may be confined to peaceful persuasion, tends to provoke disorder and impedes traffic. On this account it is declared the exercise of the police power is justified to suppress it. I cannot agree with the idea that peaceful persuasion in the form of picketing has any such tendency. As said in Exchange Bakery & Restaurant v. Rifkin, supra; such " 'picketing' connotes no evil." The doctrine that it does connote such evil consequences as disorder or street obstruction, as previously pointed out, has long since been discarded.

"In practice," says the writer on the Constitutionality of Anti-Picketing Ordinances in the Yale Law Journal, volume 48, page 314, "dangers to the public peace arising from picketing activities can be adequately controlled by an effective police administration."

In Hague v. Committee for Industrial Organization, 307 U. S. 496, 59 S. Ct. 954, 964, 83 L. Ed. 1423, Mr. Justice Roberts wrote:

"It [the ordinance involved] does not make comfort or convenience in the use of the streets or parks the standard of official action. It enables the Director of Safety to refuse a permit on his mere opinion that such refusal will prevent 'riots, disturbances or disorderly assemblage.' It can thus, as the record discloses, be made the instrument of arbitrary suppression of free expression of views on national affairs for the prohibition of all speaking will undoubtedly 'prevent' such eventualities. *But uncontrolled* official supression of the privilege *cannot be made a substitute for the duty to maintain order*

*in connection with the exercise of the right."* (The italics are mine.)

▇ I may also add that the prohibition of personal liberty cannot be made a substitute for the duty to maintain order in connection with the exercise of the right. Moreover, the contention that the suppression of peaceful picketing is necessary because its tendency is to incite disturbances and obstruct the free use of the streets, and is therefore inimical to the public welfare, is not a very flattering commentary on the efficiency of the police system of a city; for picketing assignments are ordinary carried out in quarters under police supervision, and not in isolated places.

It is largely upon the false premise, as I see it, that peaceful picketing had a tendency "to give rise to contentions and argument that often result in bloodshed and riot," that the court in Thomas v. Indianapolis, supra, held that the ordinance in question here was a reasonable exertion of the police power and therefore free from the objection that it violated constitutional guaranties of personal liberty. For this reason it lends no strength to the presumption in favor of the constitutionality of the ordinance.

The case of Hardie-Tynes Mfg. Co. v. Cruise, et al., 189 Ala. 66, 66 So. 657, 661, also relied on by petitioner, inclines to the same doctrine. Besides the constitutional feature was not much urged upon the court, as appears from the following statement:

"It is suggested by counsel for respondents that our construction of section 6395, as being an inhibition of picketing even where threats or violence are not used, renders it unconstitutional. No intimation is offered as to what provision of the Constitution is thereby offended, and we can think of none."

Pierce v. Stablemen's Union, Local No. 8760, 156 Cal. 70, 103 P. 324; Moore et al. v. Cooks', Waiters' & Waitresses' Union No. 402, 39 Cal. App. 538, 179 P. 417; A. R. Barnes & Co. v. Chicago Typographical Union No. 16, 232 Ill. 424, 83 N. E. 940, 14 L. R. A. (N. S.) 1018,

13 Ann. Cas. 54; Ex Parte Stout, 82 Tex. Cr. R. 183, 198 S. W. 967, L. R. A. 1918C, 277; St. Germain v. Bakery & Confectionery Workers Union, 97 Wash. 282, 166 P. 665, 667, L. R. A. 1917E, 824, are also cited by petitioner. It is to be observed, that since the decisions above noted were rendered there has been considerable change in the legislative and judicial viewpoint as to labor controversies. As stated in Local Union No. 26, National Brotherhood of Operative Potters v. Kokomo, 211 Ind. 72, 5 N. E. (2d) 624, 628, 108 A. L. R. 1111:

"Formerly the courts were inclined to disapprove collective bargaining, striking, and picketing upon the part of employees. However, the past few years have witnessed a decided change in public opinion, legislative enactments, and judicial construction."

This lately prevalent trend of legislative and judicial treatment in labor disputes is noted in Columbia Law Review, vol. 48, and in the same article, at pages 1527 and 1528, the case of labor's right to picket free from governmental restraint is strongly stated as follows:

"Although it is exceedingly difficult to extract from the cases a standard for predicting the fate of regulations yet to be tested, it is most desirable that the nature of the right to picket be clearly defined. Fortunately, such a crystallization has begun. In Senn v. Tile Layers [Protective] Union [supra], the United States Supreme Court for the first time identified the right to picket with the right of free speech. Mr. Justice Brandeis wrote for the majority in that case: 'Clearly the means which the statute authorizes—picketing and publicity—are not prohibited by the Fourteenth Amendment [U. S. C. A. Const.]. Members of a union might, without special statutory authorization by a state, make known the facts of a labor dispute, for freedom of speech is guaranteed by the Federal Constitution. * * * In declaring such picketing permissible, Wisconsin has put this means of publicity on a par with advertisements in the press.' Early this year (1938) the Supreme Court also emphatically denied the authority of a municipality

to limit freedom of speech by restricting the right to distribute leaflets. (Lovell v. City of Griffin, 303 U. S. 444 [58 S. Ct. 666, 82 L. Ed. 949]). It is plain that picketing and leaflet distribution raise highly similar municipal problems. Both involve the possibility of impeding traffic and both involve considerations as to the propriety of using the streets for the purpose of presenting to the public one's point of view. These recent cases lend substance to the hope that picketing is to be afforded the protection of the Fourteenth Amendment in a manner paralleling the guarantee of the right to distribute leaflets."

Freedom of the press and freedom of speech are the same, being distinguished only in the form of utterance. 16 C. J. 628.

Long since the rendition of any of the decisions heretofore mentioned on which petitioner relies, including Thomas v. Indianapolis, supra, the supreme court of the United States, in May 1937, identified the right to picket with the right of free speech. Two years after the United States court announced that doctrine, the supreme court of Colorado, in the case of People v. Harris, 104 Colo. 386, 91 P.(2d) 989, 992, 122 A. L. R. 1034, declared unconstitutional and void a statute of that state forbidding peaceful picketing. The attorney-general of that state joined with counsel for the defendant in urging the invalidity of the statute. It is to be noted also that the court pointed out that Alabama was the only other state out of the forty-eight states in the Union that had a similar statute.

In the Colorado case the defendant, Harris, was charged in the lower court with violating the anti-picketing statute. He pleaded not guilty, waived a jury trial and the case was submitted on a stipulation of facts. He was adjudged not guilty and discharged. The case came before the supreme court on a writ of error sued out by the people. There, as here, the court was confronted with a provision of criminal law which did

not regulate, but prohibited peaceful picketing. The facts stipulated revealed that such was the nature of the picketing. The court cited many authorities to show that the lawfulness of such picketing was sustained by the great weight thereof. In this connection the court said:

"No legal injury of any kind resulted to any person because of his picketing activities. That the employer has the right to refuse to pay union wages and maintain union standards is conceded. Correspondingly, labor has the right to decline to carry on any business relation with such an employer. Any loss which occurs in such economic controversies is damnum absque injuria."

It also said:

"It is contended that section 90, supra [the statute outlawed], is valid as a reasonable exercise of the police power. If this section, instead of prohibiting peaceful picketing, could be so construed as to be only a reasonable regulation thereof, the contention would be sound; but it prohibits all peaceful picketing. Any legislative exercise under the police power which violates any right guaranteed by the national or state Constitutions is invalid. In re Morgan, 26 Colo. 415, 58 P. 1071, 47 L. R. A. 52, 77 Am. St. Rep. 269; Lovell v. City of Griffin, supra. 12 C. J. 938, 939. 'Freedom is the general rule, and restraint the exception.' Wolff Packing Co. v. Court of Industrial Relations, 262 U. S. 522, 534, 43 S. Ct. 630, 632, 67 L. Ed. 1103, 27 A. L. R. 1280. It cannot be successfully maintained that guaranties of freedom of speech are less important than guaranties relating to property."

The court finally concluded:

"Whatever our individual views may be on economic controversies, such as are involved here, we cannot consent to legislative invasion of constitutional guaranties to the extent for which contention is made in this case. The line of demarcation between police power and constitutional guaranties is not always well defined. Where

a law such as section 90, here under consideration, impairs freedom of speech, as it does, in view of the stipulated facts before us, we have no doubt that it constitutes an invasion of constitutional guaranties, both under the state and federal due-process-of-law clauses and the mandatory provision prohibiting the enactment of laws impairing the freedom of speech.

"The judgment is affirmed."

The Colorado case is squarely in point with the instant case and is buttressed with ample authority. It reflects the modern view that peaceful picketing is lawful and is immune from legislative interdiction by reason of constitutional guaranties.

In an earlier opinion, the supreme court of Missouri in City of St. Louis v. Gloner, 210 Mo. 502, 109 S. W. 30, 31, 15 L. R. A. (N. S.) 973, 124 Am. St. Rep. 750, declared void an ordinance of St. Louis which in effect prohibited peaceful picketing. The ordinance provided in part that any person or persons "who shall lounge, stand or loaf around or about or at street corners or other public places, in the day or night time * * * shall be deemed guilty of a misdemeanor." The testimony disclosed that defendant was engaged in peaceful picketing. The court said:

"While the city has the undoubted right, under its charter, to regulate the use of its streets, it has no right to do so in a way that interferes with the personal liberty of the citizen as guaranteed to him by our constitution and laws."

The court quoted approvingly the following from one of its former decisions:

"They [pickets] are free men, and have a right to quit the employ of plaintiffs whenever they see fit to do so, and no one can prevent them; and whether their act of quitting is wise or unwise, just or unjust, it is nobody's business but their own, and they have a right to use fair persuasion to induce others to join them in their quitting."

It was finally declared:

"Our conclusion is that the ordinance is unconstitutional and invalid, because it infringes upon the right of personal liberty, and is unreasonable and oppressive."

Counsel for petitioners, as well as the court, in Ex Parte Stout, supra, seeks to discount the effect of the foregoing decision because the ordinance did not in terms prohibit picketing. The distinction sought to be made is not apparent. The court outlawed the ordinance because when applied to the facts of the case, it prohibited peaceful picketing. Its term embraced a prohibition of such picketing.

Counsel for petitioner also seeks to discount the case of Senn v. Tile Layers Protective Union, supra, as an authority favorable to the view that the ordinance is unconstitutional. He says: "It clearly appears from that case that the state may regulate picketing in the exercise of police power." This may be conceded, but we have an ordinance before us which, in sections 2 and 4 thereof, does not regulate, but prohibits peaceful picketing.

In Senn v. Tile Layers Protective Union, supra, the constitutionality of state anti-injunction legislation, designed to prohibit judicial interference with peaceful picketing, was declared, and the intimation that such picketing is protected by the constitutional guaranty of free speech is too plain to be misunderstood.

In Ex Parte Lyons, 27 Cal. App. (2d) 293, 81 P. (2d) 190, 193, it was declared: "In this state the right to peacefully picket rests upon the constitutional guaranty of the right of free speech."

The ordinance on its face, in sections 2 and 4, is obviously adapted to protect the employer from annoyance and incidental loss of business rather than to protect the public in maintaining its peace and the unobstructed use of the streets. But such annoyance and loss in a labor dispute are not tortious nor do they constitute an invasion of any constitutional rights. Senn v. Tile Layers Union, supra. These sections bear no reasonable

and substantial relation to the promotion of the public safety, health, morals, general welfare, for which the exercise of the police power may be invoked.

I am of the opinion that sections 2 and 4 of the Reno city ordinance No. 480 are unconstitutional and void, in that they invade the constitutional guaranties of the due process of law clauses of the federal and state constitution, and of section 9 of article 1 of the state constitution guaranteeing free speech and forbidding the state to pass any law to restrain or abridge the liberty of speech. The other sections of the ordinance being separable are not affected by the invalidity of sections 2 and 4.

I deem it unnecessary to pass on the other objections of respondents to the ordinance.

As Chief Justice TABER concurs in these views:

It is ordered that the judgment of the lower court, insofar as it adjudges said sections 2 and 4 of said ordinance unconstitutional and void, be, and the same is hereby, affirmed.

It is further ordered that said judgment, insofar as it adjudges other parts of the ordinance unconstitutional and void, be, and the same is hereby, annulled.

TABER, C. J., I concur.

DYSART, District Judge, dissenting in part:

I concur in the majority opinion of my learned associates to the extent that this court has jurisdiction to determine, by certiorari, the question presented, but I am forced to dissent as to that part of the majority opinion which holds sections 2 and 4 of the ordinance in question to be unconstitutional.

In determining the primary question before the court, namely, whether the ordinance under consideration is constitutional or unconstitutional, it is well to keep in mind the well-recognized rule of law, which prevails in most jurisdictions, and particularly the rule which prevails in this state, namely:

"When a statute (or ordinance) is assailed as being unconstitutional, every presumption is in favor of its validity, all doubts must be resolved in its favor, and, unless it is clearly in derogation of some constitutional provision, it must be sustained." Vineyard Land & Stock Co. v. District Court, 42 Nev. 1, 171 P. 166.

In the case of Thomas et al. v. City of Indianapolis et al., 195 Ind. 440, 145 N. E. 550, 552, 35 A. L. R. 1194, where the court had under consideration the identical ordinance that we here have under consideration, and in considering sections 2 and 4 of said ordinance, and in holding said ordinance to be constitutional, used the following language:

"The word 'picketing,' as used in this ordinance, has a well-defined meaning. It has been defined as the maintenance of an organized espionage upon the works or places of business of an employer and those going to and from them, and it has been remarked that the word 'picket' is borrowed from the nomenclature of warfare, and is strongly suggestive of a hostile attitude toward the individual or corporation against whom a labor organization has a grievance. * * *

"The courts, in the cases last cited, assert generally that there can be no such thing as peaceful picketing, and that no matter what the declared intention of the persons so engaged may be, the inevitable result is to create turmoil, disturbances, and breeches of the peace. It is probable that the city council, which passed the ordinance in question, took the latter view, and believed that all picketing was inimical to the peace and good order of the public, and that the public welfare would best be subserved by prohibiting all picketing in the manner described in the ordinance."

It will be noted that many of the cases cited, and quoted from in the majority opinion, contain such expressions as: "Picketing is lawful if it does not have an immediate tendency to intimidation of ·the other party to the controversy." Since picketing, in any form, is "strongly suggestive of a hostile attitude toward

the person or persons picketed," it follows that picketing is at least "intimidating" and "annoying," and is therefore an infringement upon the personal rights guaranteed to others. I am of the opinion that if picketing, in any form, does not at least intimidate or coerce the other person, in an effort to compel such person picketed to submit to the demands of those picketing, then the act of picketing becomes a vain and useless act, and in my opinion, the personal rights guaranteed under the constitution mean rights other than vain and useless acts. As said by this court in the case of Ex Parte Boyce, 27 Nev. 299, 75 P. 1, 2, 65 L. R. A. 47, 1 Ann. Cas. 66, that individual rights are "subordinate to the greater obligation not to injure others." This rule was also followed and quoted with approval in the case of Branson v. Industrial Workers of the World, 30 Nev. 270, at page 296, 95 P. 354.

In the case of Senn v. Tile Layers Protective Union Local No. 5 et al., 301 U. S. 468, 57 S. Ct. 857, 862, 81 L. Ed. 1229, cited in the majority opinion, Mr. Brandeis, speaking for the court, and in holding a Wisconsin statute to be constitutional, which legalized so-called "peaceful picketing" used the following language:

"The state may, in the exercise of its police power, regulate the methods and means of publicity as well as the use of public streets."

He then continued by saying that such regulation, "is not an invasion of the liberty guaranteed by the Constitution." I find nothing in the Senn case, supra, holding a statute or ordinance prohibiting so-called "peaceful picketing" to be a violation of any of the liberties guaranteed by the constitution.

This court, in a number of decisions, has held the rule in effect to be: that where a legislative body has adopted a statute (or ordinance) of another state, the act of adoption raises the presumption that such legislative body making the adoption enacted the statute (or ordinance) in the light of the construction that had been placed upon such statute (or ordinance) in the parent

state. While this court is not bound thereby, yet it is persuasive and should be followed unless some substantial reason requires the application of another rule. Ormsby County et al. v. Kearney et al. 37 Nev. 314, at page 371, 142 P. 803; O'Brien et al. v. Trousdale et al., 41 Nev. 90, at page 102, 167 P. 1007; In re Walker River Irrigation District, 44 Nev. 321, at page 332, 195 P. 327; Menteberry v. Giacometto, 51 Nev. 7, at page 14, 226 P. 49; Hard v. Depaoli et al., 56 Nev. 19, at page 30, 41 P. (2d) 1054. Applying the foregoing rule, I am of the opinion that greater weight should be given to the opinion in the Thomas case, supra, than many of the decisions from other jurisdictions relied upon in the majority opinion.

Being in accord with the authorities which hold any form of picketing to be an infringement upon the personal rights of others, I am therefore of the opinion that the city of Reno was within its constitutional rights in passing the ordinance in question.

ORR, J., having disqualified himself, the Governor designated Honorable JAMES DYSART, Judge of the Fourth Judicial District, to sit in his stead.