SCANLAN et al. v. HOUSTON LIGHTING & POWER CO.

No. 10018.

Court of Civil Appeals of Texas. Galveston.

June 29, 1933.

Rehearing Denied July 20, 1933.

Walter F. Brown and J. S. Bracewell, both of Houston, for appellants.

Baker, Botts, Andrews & Wharton, G. G. Gannon, F. G. Coates, and John T. McCullough, all of Houston, for appellee.

GRAVES, Justice.

The appeal, advanced for hearing under the statute, is from an order below refusing a temporary injunction. What is thought to be a proper statement of all material features in the trial court, whether substantive or procedural, is thus taken from the appellee's brief:

"On April 29, 1933, appellants, being the owners of a twelve-story office building located in the business district of Houston, Texas, and known as 'Scanlan Building,' filed this suit against appellee, the electric company serving electric energy in Houston and environs and serving such building.

"The allegations of the pleadings stated herein are limited to those deemed pertinent to this appeal.

"In their original petition appellants alleged that the operation of the Scanlan Building requires both alternating current and direct current; that prior to July, 1930, appellants had contracted with appellee separately for alternating current and direct current for said building; that about said time, appellants and appellee had entered into a written contract superseding all prior contracts, by the terms of which contract appellee became obligated to extend electric service to appellants, the service to be used for the operation of said building and to cover all electrical energy and power requirements of appellants at such location, service to be 3-phase approximately 60 cycles 120/240 volts. The rates provided in said contract of July, 1930, were set forth and it was then alleged that such contract was superseded by a contract of November, 1930, containing substantially the same provisions, but providing a different rate.

"It was then averred that after the execution of such contracts, appellee charged appellants only for the alternating current at the rates provided in such contracts and charged appellants the rates provided by ordinance of the City of Houston for direct current; that appellants paid all bills rendered as aforesaid until about October 1, 1932, under protest, and then refused to make further payments without an accounting. It was alleged that appellee by billing appellants for direct current at the ordinance rate, had overcharged appellants $885.00 up to October 1, 1932; that $1393.36 had become due under said contract of November, 1930, for electric service rendered since October, 1932; that for said period appellee had charged appellant $2929.43, whereas only $508.26 was due and owing, which amount appellants had tendered and appellee had refused to accept, and appellee was threatening to discontinue service, to appellants irreparable injury, leaving them without adequate legal remedy, etc.

"There are alternative allegations of discrimination and excessive rates charged, to appellants damage in the sum of $3000.00, for which they sue, but as to which they ask no injunctive relief.

"Injunction is prayed to restrain appellee from discontinuing electric service for said building, or threatening to do so, and to restrain appellee from entering on its records or billing appellants for any electric energy for said building except at the rates provided in said contracts of July and November, 1930.

"A temporary restraining order was issued ex parte and appellee ordered to appear and show cause why a temporary injunction as prayed for should not be granted.

"In response to such order appellee filed its special answer under oath showing cause why appellants should not be granted a temporary injunction, a summary of the facts stated in such answer being as follows:

"For more than ten years the Scanlan Building has been owned and operated by appellants and furnished with electric service by appellee. During this period such building has had two sets of wiring and electrical equipment, one set employing alternating current and the other set direct current.

These two types of service are physically separate and distinct and each requires separate generating, distribution, and measuring equipment.

"During this ten year period, direct current for said building (which is practically obsolete and constitutes only about one-third of one per cent. of appellee's total sales) has been provided and paid for at the rates prescribed by Houston city ordinance, and alternating current has been provided and paid for by rates fixed by special contracts.

"Exact copies of the contracts of July and November, 1930, are attached to the answer as exhibits. Such contracts provide that the service to be furnished thereunder shall be 3-phase approximately 60-cycle current with a split voltage, which type of electric service can only be had in alternating current and not in direct current, which facts were at all times known to appellants.

"After the execution of said contracts of July and November, 1930, appellee sent appellants each month a monthly statement for direct current consumed in said building, such consumption being billed at the ordinance rate, and sent appellants each month a separate statement for alternating current billed at the rates provided in the above mentioned contracts, all of which statements appellants paid until about the end of July, 1932. Since July, 1932, separate monthly statements of the kind last above mentioned have been sent regularly to appellants and appellants have paid appellee nothing for either type of service. As of April 19, 1933, there was due and owing to appellee by appellants $2098.60 for alternating current and $850.69 for direct current for said building, or a total amount of $2949.29. Appellee about said date notified appellants that if the amounts due and owing were not paid within five days, it would be compelled to discontinue service for said building, and after receipt of such notice appellants notified appellee for the first time that it was their contention that such contracts of July and November, 1930, covered direct current service for said building as well as alternating current. Appellee will continue furnishing direct current if the amounts due for this type of service are paid and will continue furnishing alternating current if the amounts due for alternating current service are paid.

"Appellants knew and understood prior to and at the time of the execution of the contracts of July and November, 1930, that the same covered alternating current only and that direct current was to be furnished at the ordinance rate as had theretofore been the arrangement, agreement and practice. From July 1, 1930, down to the present appellee has offered and furnished electric service to office buildings in Houston under circumstances similar to and like those of Scanlan Building at the rates provided in the above contracts for alternating current and at the ordinance rate for direct current. The furnishing of direct current as well as alternating current at such contract rates would constitute an unlawful preference to appellants and an unjust discrimination against other consumers in Houston taking these two types of service under circumstances similar to and like those of the Scanlan Building. * * *

"Appellants filed their replication, setting up that approximately one-half of the electrical energy furnished for the Scanlan Building is single-phase alternating current, denying that they understood that only alternating current was to be furnished under said contracts, and denying that they had promised to pay their delinquent account.

"May 8, 1933, a hearing was held on the verified pleadings of the parties and the testimony of witnesses offered by appellants. The court entered its order denying the temporary injunction, to which appellants excepted and gave notice of appeal and the case is now in this court on appeal, pursuant to the provisions of Article 4662 of the Revised Civil Statutes of Texas, 1925."

The single question the appeal presents is whether the court abused its discretion in thus refusing the writ. 24 Texas Jurisprudence, Injunctions, §§ 84, 253; 14 R. C. L., Injunctions, §§ 12, 13.

■ To establish that it did, it is necessary for appellants to here show that they not only both alleged and proved every essential element to a cause of action for the injunctive relief they sought, but also that they likewise negatived all reasonable inferences of the existence of other facts under which they might not have been entitled to such relief. Gillis v. Rosenheimer, 64 Tex. 246; Railroad Commission v. Inter-City Forwarding Co. (Tex. Civ. App.) 57 S.W.(2d) 290; Mann v. Pace (Tex. Civ. App.) 58 S.W.(2d) 1070; 24 Texas Jurisprudence, Injunctions, §§ 167–169.

It is not thought they met these burdens; they themselves, through able counsel, thus state their conception of the fundamental issue involved: "The difference between the amount claimed by appellee to be due and that admitted by appellants to be due is occasioned by their different interpretations placed upon the existing contract above referred to. It being contended by appellants that the same covered 'all the electrical energy and power requirements for the building', and that the aggregate kwh (kilowatt hours) should be computed upon the schedule set forth in the contract. It is contended on the other hand by appellee that the same applied only to the two meters for alternating current and that the direct current was not included in the contract, and that it was authorized to charge and bill appellants for the direct current under the maximum ordinance rate."

■ It is quite true that in a measure this locates the point of divergence between the parties, but, as stated in section 253 of 24 Texas Jurisprudence, supra, the rule is that, "if the order was based on conflicting evidence or diverse inferences, it will not be disturbed. The evidence is not reviewed for sufficiency, as it would be upon appeal from a final judgment, but only to see if it supports the court's exercise of discretion."

■ When this evidence is measured by that standard, it seems plain that no such abuse is shown; indeed, the contract declared upon by the appellants, that is, the one of July 1 of 1930, seems to this court to be clearly susceptible of a different construction than that appellants adduce their asserted rights under, as well as one that reasonably supports the trial court's refusal to accord them the restraint sought; its controlling provision is this: "T. H. Scanlan Estate (Scanlan Building), herein called 'Consumer', hereby applies to Houston Lighting & Power Company, herein called 'Company', to extend electric service to it under the terms and conditions stated herein; the service to be used for the operation of Office Building, and shall cover all electrical energy and power requirements of Consumer at this designated location; service to be 3-phase, approximately 60 cycles, 120/240 volts, and to be delivered as at present, which is to be known as 'Delivery Point', and from and beyond said delivery point Consumer will be entirely responsible for the use and distribution of the service purchased from Company."

Whatever else may be read into it, it seems to this court apparent that these two phrases must be construed together, and that the succeeding one is merely a specification of what was meant by the first, that is, the same as if it had read "all electrical energy and power requirements of 3-phase approximately 60 cycles, 122–208 (120/240) volts service."

In other words, that it is just an instance of where general expressions in an engagement between parties are restricted by particular descriptions immediately following them. 13 Corpus Juris, Contracts, p. 538.

■ Since, therefore, the gravamen of appellants' contention [by their own quoted statement of it] is that appellee had become bound by the terms of this contract of July 1 of 1930 to furnish them direct as well as alternating current at the rates scheduled therein, their whole case falls under such a diverse inference if it be reasonably subject to that inference; as indicated, it seems to us obvious that such interpretation may be put upon it as otherwise the particular provision specifically describing the nature of the service to be supplied under the general expression of it is nullified. Even if the two expressions should be regarded as repugnant, the rule cited would still apply, as is so clearly expressed in such authorities as English et al. v. Shelby, 116 Ark. 212, 172 S. W. 817, 819; 10 Texas Jurisprudence, Contracts, 307, § 175; 2 Williston on Contracts (1920) 1200, § 619.

■ Furthermore, appellants' insistence that a question of fact that should have been tried out on full hearing was raised by the specification in the contract "service to be 3-phase, approximately 60 cycles, 120/240 volts," as to whether or not the appellee obligated itself under that contract as a whole to furnish them direct as well as alternating current at the rates provided therein, seems to have been conclusively negatived by this showing in the record: The only proof appearing as to the meaning of that phrase is the testimony of appellants' own witness, Mr. Ghiselin, who testified that there is no such thing as 3-phase direct current, or 60-cycle direct current, his uncontroverted interpretation of this language in the contract being as follows: "Q. Suppose the statement was made to you that the electric service to be furnished at a certain location was three-phase approximately sixty cycle 120/208 voltage; would that mean alternating current or direct current? A. It would mean alternating current off the network system."

In this connection, through the sworn pleadings and otherwise, it undisputedly appears not only that the appellee had furnished and correctly billed appellants for all alternating current delivered at the established contract rates, but also had supplied the monthly or total volume of direct current it claimed to have.

■ It further, admittedly, appears that the parties themselves, in legal effect at least, by their actions construed the contract, now depended upon by appellants for a contrary effect, not to obligate the appellee to furnish the direct current needed at the rates therein specified, in that, as is quoted at the bottom of preceding page 3 hereof, the appellants received and paid the bills for the service as rendered to them by the appellee on the basis of the alternating current only at the contract rate and the direct-current at the city ordinance rate for more than two years after that contract became effective; it is true they allege they made such payments "under protest until on or about the 1st day of October, 1932, when they refused to longer pay the same without an accounting"; but the record brought here wholly fails to show what kind of protest this was. On the hearing of the appeal in this court, however, their able counsel, Mr. Bracewell, freely conceded that, while appellants had made some general protests that the bills were too high, they had never made nor contended for the construction of the contract now urged until April of 1933, which was after the appellee had given them notice that the service would

be discontinued unless the past-due bills were paid.

In these circumstances, the trial court would seem not to have been without warrant in concluding that the parties themselves, prior to any controversy between them over its meaning, had by their course of dealing with each other construed the contract as requiring the alternating current only to be furnished at the rates therein prescribed, and that such interpretation, being reasonable, should be enforced. Perry & Co. v. Langbehn, 113 Tex. 72, 81, 252 S. W. 472.

Further discussion is deemed unnecessary, since these conclusions determine the merits of the appeal; they require an affirmance of the trial court's judgment; it will accordingly be so ordered.

Affirmed.