## SAN ANGELO v. AMALGAMATED MEAT CUTTERS & BUTCHERS WORKMEN OF NORTH AMERICA, LOCAL 103.

### No. 11077.

Court of Civil Appeals of Texas. Galveston.

April 18, 1940.

L. R. Insirilo and Nat Friedman, both of Houston, for appellant.

Fisher & Holliday and Sewall Myer, all of Houston, for appellee.

GRAVES, Justice.

This appeal, accelerated into and advanced for hearing by this court, pursuant to R.S. Article 4662, is from an order of the Eleventh District Court of Harris County refusing the appellant a temporary injunction against the appellees preventing the picketing of his place of business in the City of Houston by them, in undisputed circumstances.

By mutual acceptance thereof from both parties, these findings by the learned trial court represent the facts upon which the appeal must be determined:

"This is a suit brought by plaintiff, San Angelo, against the Amalgamated Meat Cutters and Butchers' Workmen of North America, Local Union No. 103, and several of its members, seeking an injunction to prevent picketing, and so forth, in front of the plaintiff's place of business.

"In June of 1939, a temporary contract was entered into between the Union and Mr. Tamborello, who was acting as the unauthorized representative of Mr. San Angelo during the latter's illness. Upon Mr. San Angelo's recovery, negotiations were entered into between Mr. San Angelo and representatives of the Union and his employees looking to the execution of a contract for a period of one year. The requested contract is, in substance, the same as the temporary contract. After some agreeable delay and after several conferences, the various parties failed to reach an entire agreement upon the matters covered by the so-called permanent contract, and after a vote by the employees of Mr. San Angelo and the Union involved, a strike was called and all of the employees of Mr. San Angelo who were members of defendant Union walked out. Since that time the striking Union employees have picketed Mr. San Angelo's place of business, not invading his premises and only using placards described in the testimony as peaceful persuasion. There has been no violence of any character.

"Both the executed temporary contract and the submitted contract were introduced

in evidence and speak for themselves as to their respective terms. A number of Mr. San Angelo's employees are members of defendant Union and were such members at the time of the execution of the so-called temporary contract and are still members thereof.

"At this time the only point in dispute between the plaintiff and the defendants relative to the submitted contract and which the plaintiff refused to sign, is that portion of the submitted contract by the terms of which it is provided that if plaintiff should hereafter employ anyone to perform duties now performed by his former employees who are members of the defendant Union, that unless such employees should within seven days become members of defendant Union, such employees would be discharged by the plaintiff, the same being what is generally termed a closed shop agreement.

"Mr. San Angelo declined to execute the contract with this provision, but is agreeable to all other provisions. The defendant Union, and the defendants who are striking employees of the plaintiff, insist upon their right to have such provision substantially incorporated in the new contract with the plaintiff."

To that factual-basis, the court then appended these conclusions of law:

"The sole question, then, to be determined is whether or not such difference between the plaintiff and his employees and such Union is such a labor-dispute as entitles the defendants to picket the plaintiff's place of business in the manner in which they have been so doing and as heretofore found. The defendants in effect contend that by such portion of the submitted contract they are entitled to assurance that they will not be required to work with non-union meat cutters in Mr. San Angelo's business for a period of more than seven days and that such a condition is just as important to the employees as hours of work, working conditions, wages, and so forth.

"There is only one decision in Texas squarely on the point, that being the decision of Judge Fly in the case of Cooks', Waiters' & Waitresses' Local Union v. Papageorge, Tex.Civ.App., 230 S.W. 1086, decided by Judge Fly in May of 1921. The facts of the Papageorge case and this case are substantially identical, except that in this case the striking employees have not gone to the extent that the employees went in the Papageorge case. Judge Fly cites, in support of his decision, the Webb case

Webb v. Cooks', Waiters' & Waitresses' Union, in Tex.Civ.App., 205 S.W. 465. However, in the Webb case, none of the Webb employees were on strike, but the Union, in the Webb case, was endeavoring to force Webb's employees to join its union and also thereby to compel Webb to have a closed shop. To my mind, the Webb case is not in point, either to the case now on trial, or to the Papageorge case. Judge Fly, in the Papageorge case, definitely holds that an attempt by the employees who are members of a union to secure a closed shop agreement is not such a labor dispute as under relevant statutes would entitle employees to peaceably picket the premises of their employer.

"The defendants herein, in argument, contend that their disagreement with Mr. San Angelo is a bona fide labor-dispute, and that under the First Amendment to the United States Constitution (The Free Speech Amendment) and the Fourteenth Amendment thereto (the Due Process Amendment), they are entitled, by the means which they have used, to make public the fact that they have such labor-dispute with Mr. San Angelo.

"The case of Senn v. Tile Layers' Union, by the United States Supreme Court, found in 301 U.S. 468, 57 S.Ct. 857, 81 L.Ed. at page 1229, is an opinion by Mr. Justice Brandeis. It is interesting to note that four members of this Court dissented from the majority opinion. That was a case which came up from the Supreme Court of Wisconsin, 222 Wis. 383, 268 N.W. 270, 872, which has passed on substantially the same point based upon Wisconsin Statutes, which are not very dissimilar from the Texas Statutes in question. This decision by the United States Supreme Court holds that the issues in this case involving the construction and application of the Wisconsin Statutes and Constitution, having been made by the highest court of Wisconsin, is conclusive as to such construction and application. The question determined by the United States Supreme Court is whether or not the Wisconsin Statute, as so construed by this Supreme Court, was invalid as to the Senn controversy, because the sole question in dispute between Senn and the Union was Senn's refusal to sign a contract unionizing his shop and prohibiting him from doing any work himself, an even stronger situation than exists in the San Angelo case. The Senn case holds that such picketing and publicity as are author-

ized by the Wisconsin statute as construed by its own Supreme Court, are not prohibited by the Fourteenth Amendment to the United States Constitution stating in the opinion:

"'Members of a Union might, without special statutory authorization by a state, make known the facts of a labor dispute, for freedom of speech is guaranteed by the Federal Constitution.'

"There are numerous cases by the United States Supreme Court dealing with the abovementioned amendments to the United States Constitution, which would seem to indicate that as a part of the free speech and due process guaranteed to all citizens, Union members have a right to publicize their differences with their employer.

"To narrow the question to a final point, it is this: Did the defendants, under the free speech and due process amendments to the United States Constitution, have the right to publicize their dispute with their employer, Mr. San Angelo, because of his failure to sign an agreement which contains a closed-shop clause? Judge Fly, in the Papageorge case, holds that such publication is not permissible under the Texas labor statutes, citing the Tucker case by the Supreme Court of Texas, Ex parte Tucker, 110 Tex. 335, 220 S.W. 75, which definitely holds that under the free speech amendment courts of equity may not be used to restrain the exercise of free speech, and that any abuse of this privilege may only be dealt with in civil damages, or under the criminal law.

"It, therefore, seems to me that, in spite of Judge Fly's decision in the Papageorge case, and under the free speech and due process clauses of the United States Constitution, the defendants in this case have the right to popularize in the manner in which they have been so doing, their dispute with their employer, Mr. San Angelo, even though such dispute involves only the closed-shop feature of the contract submitted to Mr. San Angelo, and which he, for that reason only, refused to sign.

"For the above reasons, the application for temporary-injunction is denied, to which the plaintiffs give notice of appeal."

■ The single question of law the appeal presents is whether the court abused its discretion in thus refusing the writ. Scanlan v. Houston L. & P. Co., Tex.Civ. App., 62 S.W.2d 537, at page 539, Col. 2, and authorities there cited.

■ In passing upon it, the facts so found below and accepted here are binding upon this court, in absence of both a jury and any challenge thereof. 3 Tex.Jur., par. 771, footnote 5, and cited authorities; 4 Texas Digest, Appeal and Error, ■ and collated cases; International-G. N. v. Singer Iron & Steel Co., Tex.Civ.App., 96 S.W.2d 1003, 1006; Standard Savings & Loan Association v. Fitts, Tex.Civ.App., 24 S.W.2d 507.

Not only so, but they will be here reviewed with the sole objective of determining whether or not they support the court's exercise of discretion, and not for sufficiency, as would be done upon an appeal from a final judgment. Scanlan v. Houston L. & P. Co., Tex.Civ.App., 62 S.W.2d 537, at page 540, writ of error refused.

■ This court, while not seeing eye to eye with all the able trial judge's reasoning, experiences no difficulty in holding this order to have been well within the exercise of a sound judicial discretion.

The two main cases appellant relies upon for a reversal are, as appears in the quoted conclusions, Cooks', Waiters' & Waitresses' Local Union v. Papageorge, Tex.Civ.App., 230 S.W. 1086, and Webb v. Cooks', Waiters' & Waitresses' Union, Tex.Civ.App., 205 S.W. 465. These were both reviewed in Carpenters, etc., Union v. Ritter's Cafe et al., 138 S.W.2d 223, 226, recently decided by this court. It was there held that neither, when properly construed, constituted any authority against the peaceful picketing of an employer's premises for a lawful purpose by his employees and their Union, between whom and himself there existed a bona fide labor-dispute, such as the court below found to have existed in this instance; upon the contrary that, as applied to situations like this, our Texas courts, in those decisions along with others cited, have established as our law in labor-relations certain guiding principles, the first of which was thus stated: "That picketing by a labor organization or union, or its members (which was unlawful at common law), has been legalized by our cited statutes, with the rather limited objective of allowing striking employees who have a bona fide dispute with their employer over wages, hours, or working conditions, to persuade other employees to leave him, or dissuade third persons from becoming his employees." Our statutes therein referred to are R.S. Articles 5152–5154.

After deducing that principle from the holdings referred to, it was further in the Ritter opinion said: "Not only so, but as a corollary, they have further declared that no right of free speech under the fundamental law of either nation or state is transcended by an injunction restraining the picketing of a place of business by persons (whether members of a labor organization or union, or not) who seek either to prevent the public from trading with the picketed place, or to compel its owner to. break a contract which he has with some such disassociated third person; see the Webb, Papageorge, and Texas Motion Picture Co. cases, supra, respectively."

So that, considering the facts in those two cases, both of which were appeals from final judgments rather than from an interlocutory order like that here involved, it will be found that the decisions in each were predicated upon findings on the facts that the strikes were being not only illegally conducted, but also for an unlawful purpose. For that reason, in each instance, the picketings were enjoined. It would serve no useful purpose to detail or even make a resume of such findings, since they are plainly stated in the opinions of those two able courts—the Supreme Court having refused a writ of error in the Webb case, and it having largely furnished the basis for the subsequent determination by the San Antonio court in the Papageorge case.

But the illegal acts found there, in consequence of which the restraint against picketing was ordered, constitute a far cry from the facts ruling the case at bar; here the picketing was admittedly peaceful and orderly, and, as we think, by employees of the appellant who clearly fall within the class of those our statutory policy and decisions confer the right to strike upon; the right of the appellant to refuse absolutely to make the tendered contract at all is here not involved—the sole issue is whether, when he refused to make it, his employees and their Union could, in a peaceful and orderly manner, strike against that refusal, and, in like manner, publicize their views upon it in the way they did in front of his premises; the finding that the original contract of employment between him and them had been unauthorized by him becomes immaterial, because they were at least his employees de facto; he dealt with both them and their Union as such in negotiations looking to the continuation of that pre-existing relationship, and these only went on the rocks when the closed-shop provision in the proposed new contract was reached; he had a clear right to refuse to make it, and in turn, as this court understands the law, they had the right to strike and also to publicize the controversy between him and themselves, provided they did so peacefully, as well as within the other limitations our law and decisions have so imposed upon them.

As concerns the right of free speech, as this court sees it, this was an instance where that privilege inured under our constitutional provisions of both State and Nation to the appellees, so long as they exercised it within the limitations thus laid down. Under the unchallenged findings, instead of there having been violence or other unlawful acts, all that appeared here was the stated public protest by the appellees against the appellant's refusal to make a closed-shop contract with them. While, as indicated, he had the right to so refuse, they, in turn, had the correlative right to so peacefully exhibit their protest against his refusal, in which—it is thought—they were pursuing a constitutional immunity vouchsafed by both the Texas and United States constitutions, Vernon's Ann. St.Const. art. 1, § 8; Const.U.S.Amend. See Senn v. Tile Layers' Union, 301 U.S. 468, 57 S.Ct. 857, 81 L.Ed. 1229, and Ex Parte Tucker, 110 Tex. 335, 220 S.W. 75. That is to say, there having been no interference with any natural or contractual rights of this appellant by attempts of the appellees at intimidation or coercion, nor any threats, verbal or written, nor other unlawful acts, by them against him, their privilege of speaking their own minds in the way they did, upon his refusing to go on with them under a closed-shop agreement, was not subject to suppression by injunction. Thornhill v. State of Alabama, 60 S. Ct. 736, 84 L.Ed. ——; Carlson v. People of State of California, 60 S.Ct. 746, 84 L. Ed. ——.

These conclusions require an affirmance of the judgment; it will be so ordered.

Affirmed.