Action by the City Dry Cleaners Laundry, Inc., against Barbara Moore and others for an injunction. From a decree for plaintiff, the defendants appeal.
Affirmed except as to one portion of the decree and cause remanded with directions. *Page 867 
This is an appeal by the defendants below from an injunction decree entered by the Circuit Court of Dade County, Florida, in favor of the plaintiff.
The plaintiff, whom we shall refer to as "City Laundry", instituted a suit in equity against one of the defendants, whom we shall refer to as the "Union", and certain of the agents and members of said union, to enjoin the union, its members and agents, from picketing in or about the premises or vicinity of the plaintiff's plant wherein it maintained and operated a laundry and dry cleaning business and from displaying handbills or advertising matter or announcing by newspaper, radio or other means that the employees of the plaintiff corporation were on strike.
The pertinent allegations of the bill of complaint, filed on February 2, 1948, are set forth as follows: The City Laundry has never entered into any contract with, nor has it otherwise ever designated or recognized, the defendant union, or any other union, as the collective bargaining agent or representative for its employees. For several months prior to the institution of suit the defendant union has been attempting to enlist the employees of the City Laundry as members of its union; however, a majority of the plaintiff's employees have never affiliated with nor designated or recognized the defendant union as their agent or representative for negotiating with the City Laundry. Despite these facts, numerous organizers acting for the union appeared on the sidewalk and street in front of the City Laundry plant on January 31, 1948 and attempted to coerce and intimidate the City Laundry employees and thus prevent them from reporting for work. On February 2, 1948 nine persons representing the union picketed the plant, carrying placards containing wording such as "City Laundry Puts Their Employees in Jail," "City Laundry Pays Starvation Wages", "City Laundry Unfair", and the like. At about the same time the union caused a news story to be printed in one of the Dade County daily newspapers which claimed, untruthfully, that at least 85% of plaintiff's employees were members of the defendant union but that the plaintiff refused to recognize the union as the duly designated representative of said employees; and that the union intended to call a strike at the City Laundry plant if the plaintiff continued to refuse recognition to the union as the bargaining agent for the employees. The bill charged that by means of the concerted acts and activities of the defendants set forth the union was attempting to cause or induce a strike at the City Laundry plant without the authorization of a majority of the employees to be governed thereby, was attempting to coerce the City Laundry into recognizing the union as the collective bargaining agent for its employees, was coercing the employees of the plant in the enjoyment of their legal rights, and was engaging in picketing in an unlawful manner. The bill charged, further, that by reason of these illegal acts a large number of plaintiff's employees who desired to work had failed to report at the plant because of their fear of crossing the picket line, that the plaintiff's property rights had been invaded, and that the plaintiff had suffered and would continue to suffer irreparable injury thereby.
Based on the bill of complaint the chancellor, on February 4, 1948, entered an order temporarily restraining the union and its representatives from picketing the plant of the plaintiff "otherwise than in a peaceable manner."
On February 11, 1948 the plaintiff filed a sworn petition for a further restraining order against the defendants, in which it averred that in violation of the restraining order of February 4, the union had been guilty of violence and threats toward the plaintiff's employees and property, in that since the entry of the prior order a union organizer had given one of the employees a severe physical beating and had threatened the life of another, in a cafe close to plaintiff's plant; that another employee operating a company truck in the pursuit of his employment had been hospitalized as *Page 868 
the result of a severe beating with fists, stones and bottles, and the truck had been broken and damaged; that one of the union pickets, a former employee of the City Laundry, had threatened to place foreign substances in the company oil tanks, to wreck the plant machinery, to blow up the steam boilers, and to inflict serious injury upon the engineer in charge of such physical properties.
The plaintiff charged in the petition that the violence alleged was engaged in by the defendants and directed toward the property, employees and officers of the plaintiff, in an effort to coerce and intimidate them and to instill generally in plaintiff's employees a fear of crossing the picket line at the plant; that said coercion, intimidation and violence was such an integral part of the picketing taking place at the plaintiff's plant and was so used in conjunction with said picketing that it was impossible to separate the acts of violence, coercion and intimidation by the defendants from the picketing, inasmuch as such picketing was being directed toward the employees as a constant reminder that they would be subjected to like treatment in the event they persisted in crossing the picket line; that therefore the act of picketing was in fact an act of intimidation and coercion directed toward the plaintiff and its employees, in contravention of law.
Testimony was taken on the petition and an answer denying the averments, but decision on the issues was reserved by the chancellor until final hearing.
The plaintiff, on March 5, 1948, filed still another sworn petition for a temporary restraining order against the defendants, alleging that subsequent to the hearing on the petition filed on February 11, further acts of violence had been engaged in by the union and its representatives, in that on March 2 one of plaintiff's drivers charged with the duty of transporting plaintiff's employees to and from the plant had been assaulted and beaten and that on the same day another company driver had been pulled from a company truck and severely beaten; that on March 4 another employee had been beaten by a union organizer and that in the evening of that day two union members had assaulted still another employee of the plaintiff.
A hearing was held on the petition and an answer denying its averments, but the transcript of record fails to advise us whether an interlocutory order was ever entered by the chancellor on the issues presented.
In due course the defendants filed their answer to the bill of complaint. They admitted attempting to enlist the plaintiff's employees as members of the union and asserted that as the result of their efforts a majority of the employees had joined their organization and hence the union was the duly constituted bargaining agent for the majority of plaintiff's employees; they averred that they had informed the plaintiff that the union represented a majority of the employees and had solicited the negotiation of a contract for wages, hours and working conditions for and on behalf of their members but that the plaintiff had refused to recognize the union as the bargaining agent or to discuss or negotiate with it any contract or agreement whatsoever; they denied that they were attempting to induce or cause a strike and asserted that as a matter of fact they had actually called and caused a strike and that the same was in progress; they admitted that the representatives of the union were picketing the plant of City Laundry and were carrying placards as alleged but denied that the picketing was not peaceful or that they had been guilty of threats, force, violence, coercion or intimidation directed either against the employees of the plaintiff reporting for work, the officers of the company, or its property, or that they were attempting to interfere with the orderly operations of plaintiff's business by the creation of any disturbance or through any fears or intimidation; they admitted placing news releases and advertisements pertaining to the controversy in the newspapers and admitted writing letters to employees who had crossed the picket line in an effort to persuade said employees to stay away from work but denied that the newspaper ads or releases were untrue or that the letters contained *Page 869 
veiled threats of possible retaliation; they denied that any acts on their part had constituted an invasion of the property rights of the plaintiff, other than as might be the natural consequence of an economic struggle between labor and management in an orderly and lawful strike and incidental picketing, and denied that any acts on their part had constituted an unlawful conspiracy.
Upon the issues raised by the bill and answer evidence was adduced before a commissioner appointed by the court for the purpose. In due course this evidence was delivered to the chancellor who at final hearing entered his decree upon this evidence and also evidence taken in open court before him at the several hearings on applications for the entry of temporary restraining orders.
The final decree entered by the chancellor found, in effect, (1) that a secret ballot on the issue of whether the employees of City Laundry should engage in a strike had never been taken among the employees, as was required by section 481.09 (3-4), Florida Statutes, 1941 and that with respect to such election as had been held a majority of the employees to be affected thereby had not participated therein nor had they otherwise voted to go out on strike; (2) that the defendant union did not represent a majority of the employees for the purpose of bargaining with the City Laundry or for any other purpose; (3) that no request by any employee had ever been made to the plaintiff for an increase in wages, for a change in working conditions, or for any relief whatsoever, nor had any employee ever been discharged because of attempting to make any such requests and that hence no labor dispute existed between the City Laundry and its employees; (4) that on several occasions throughout the period of the picketing of plaintiff's plant the defendant union had caused employees of the plaintiff to be severely beaten because of their continued employment by the plaintiff; (5) that other acts of violence, threats, coercion and intimidation directed toward the plaintiff, its employees, and its properties had been conclusively shown by the record; (6) that such acts of violence, threats, coercion and intimidation by the union and its organizers were a part of the activities, plan and design of the defendant union to keep employees from crossing the picket lines and to force and compel the plaintiff to recognize the union as the representative and bargaining agent for the plaintiff's employees.
Based upon the findings the chancellor entered the following permanent injunction:
"1. That the Court has jurisdiction of the parties and of the subject matter in this cause, and that the equities of this cause are with the plaintiff.
"2. That the defendants, and each of them, their servants, agents and employees, be and they are hereby enjoined and restrained (under Section 481.09(3), F.S.A.) in the absence of any authorizing vote of the majority of the plaintiff's employees from resuming, continuing or repeating the acts complained of in the bill of complaint, or any other acts inviting, inducing, signalling or advertising a strike or cessation of work at plaintiff's place of business.
"3. That the defendants, and each of them, their servants, agents and employees, and all persons acting in conspiracy with them, be and they are hereby enjoined and restrained from picketing plaintiff's place of business.
"4. That the defendants, and each of them, their servants, agents and employees, and all persons acting in conspiracy with them, be and they are hereby restrained and enjoined from molesting, interfering, intimidating, coercing or directing any violence towards plaintiff, its property, its employees or servants.
"5. That the costs of this cause, including $400.00 hereby allowed as a fee to the examiner appointed by this Court and who took the testimony, shall be taxed against the defendants."
The basic question in the case is whether the essential facts found by the chancellor were sustained by the evidence and whether the essential findings were sufficient to support the final decree that was entered. *Page 870 
The evidence in the record was amply sufficient to support the findings of the chancellor, that the defendant union had not been designated or selected by the plaintiff or a majority of its employees to act as the representative of the employees in negotiations with the plaintiff. It was also sufficient to support the findings of the chancellor that the representatives of the union had been guilty of force, threats, violence, coercion and intimidation directed toward the plaintiff, its employees and properties, and that such acts and activities were part and parcel of a plan, scheme or design of the defendant union to keep employees from crossing the picket line and to hinder and retard the business of the plaintiff, and through such means, to force and compel the plaintiff to recognize the union as the representative and bargaining agent for the plaintiff's employees. We think, therefore, that the entry of an injunction order was proper, and (except for Paragraph 2 of the decree, which will be discussed later) that the decree appealed from should stand affirmed.
It is now firmly established under federal and state decisions that peaceful picketing is not per se unlawful and hence will not be enjoined if carried on for a lawful purpose. Senn v. Tile Layers Union, 301 U.S. 468, 57 S.Ct. 857, 81 L.Ed. 1229; Thornhill v. Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093; Carlson v. California, 310 U.S. 106, 60 S.Ct. 746, 84 L.Ed. 1104; Thomas v. Collins, 323 U.S. 516, 65 S.Ct. 315, 89 L.Ed. 430; Cafeteria Employees Union Local 302 v. Angelos, 320 U.S. 293, 64 S.Ct. 126, 88 L.Ed. 58; Bakery Pastry Drivers Local 802 v. Wohl, 315 U.S. 769, 62 S.Ct. 816, 86 L.Ed. 1178; American Federation of Labor v. Swing, 312 U.S. 321, 61 S.Ct. 568, 85 L.Ed. 855; Bayonne Textile Corp. v. American Federation of Silk Workers, 116 N.J. Eq. 146, 172 A. 551, 92 A.L.R. 1450; People v. Harris, 104 Colo. 386, 91 P.2d 898, 122 A.L.R. 1034; City of Reno v. Second Judicial District Court, 59 Nev. 416, 95 P.2d 994; San Angelo v. Amalgamated Meat Cutters, Tex.Civ.App. 1940, 139 S.W.2d 843; Teller, Labor Disputes and Collective Bargaining, Vol. 1, Sec. 111, and Cumulative Supp., 1947. However, picketing for an unlawful purpose or accompanied by threats, force, violence, coercion or intimidation enjoys no such immunity. American Steel Foundries v. Tri-City Central Trades Council, 257 U.S. 184, 42 S.Ct. 72, 66 L.Ed. 189, 27 A.L.R. 360; Milk Wagon Drivers Union of Chicago, Local 753 v. Meadowmoor Dairies, 312 U.S. 287, 61 S.Ct. 552, 85 L.Ed. 836, 132 A.L.R. 1200; Hotel Restaurant Employees International Alliance v. Wisconsin Employment Relations Board, 236 Wis. 329, 294 N.W. 632, rehearing denied295 N.W. 634, affirmed 315 U.S. 437, 62 S.Ct. 706, 86 L.Ed. 946; Retail Clerk's Union, Local No. 1403 A.F. of L. v. Wisconsin Employment Relations Board, 242 Wis. 21, 6 N.W.2d 698, 149 A.L.R. 452; Wisconsin Employment Relations Board v. Milk Ice Cream Drivers Dairy Employees Union, 238 Wis. 379, 299 N.W. 31, certiorari denied 316 U.S. 668, 62 S.Ct. 1035, 86 L.Ed. 1744; Carpenters and Joiners Union v. Ritter's Cafe, 315 U.S. 722, 62 S.Ct. 807, 86 L.Ed. 1143; Westinghouse Electric Corp. v. United Electrical Radio Machine Workers, 139 N.J. Eq. 97, 49 A.2d 896; Denver Milk Producers v. International Brotherhood of Teamsters,116 Colo. 389, 183 P.2d 529; Swenson v. Seattle Central Labor Council, 27 Wn.2d 193, 177 P.2d 873, 170 A.L.R. 1082; Northwestern Pac. R. Co. v. Lumber Sawmill Workers Union,31 Cal.2d 441, 189 P.2d 277; Allen-Bradley Local No. 1111 v. Wisconsin Emp. Rel. Board, 315 U.S. 740, 62 S.Ct. 820, 86 L.Ed. 1154; Bakery Sales Drivers Local Union No. 33 v. Wagshal, 333 U.S. 437, 68 S.Ct. 630; Teller, Labor Disputes and Collective Bargaining, Vol. 1, Sections 113-140, and Cumulative Supp., 1947.
The Florida Statutes forbid coercion or intimidation of any employee in the enjoyment of his legal rights, picketing by force and violence or other than in a reasonable and peaceable manner, or picketing in such a manner as to prevent ingress and egress to and from any premises. Sec. 481.09(11, 13), Florida Statutes 1941, F.S.A. Hence, when picketing is shown in a given instance to have been set in a background of threats, violence, force, fear, *Page 871 
intimidation or coercion, the provisions of the statute have been violated; for, as stated by the Supreme Court of the United States in a similar situation, "In such a setting it could justifiably be concluded that the momentum of fear generated by past violence would survive even though future picketing might be wholly peaceful * * * Judges need not be so innocent of the activities of such an industrial conflict as this record discloses as to find in the Constitution a denial of the right. * * * [of the state] to conclude that the use of force on such a scale was not the conduct of a few irresponsible outsiders. The Fourteenth Amendment still leaves the state ample discretion in dealing with manifestations of force in the settlement of industrial conflicts. And in exercising its power a state is not to be treated as though the technicalities of the laws of agency were written into the Constitution * * *" See Meadowmoor Dairies v. Milkwagon Drivers Union, 371 Ill. 377, 21 N.E.2d 308, 312 U.S. 287, 61 S.Ct. 552, 85 L.Ed 836, 132 A.L.R. 1200; American Federation of Labor v. Swing, 312 U.S. 321, 61 S.Ct. 568, 85 L.Ed. 855; Paramount Enterprises, Inc., v. Mitchell, 104 Fla. 407, 140 So. 328.
Under the circumstances shown by the record, the chancellor did not commit reversible error, therefore, in enjoining the defendants permanently from picketing the plaintiff's place of business, even though some of the acts of violence proven were not directly traceable to the representatives of the defendant and even though the activities of the union at the actual picket line were, on the whole, on the surface at least, of a peaceful and orderly nature. Neither did the court commit reversible error in permanently enjoining the defendants, their servants, agents and employees from molesting, interfering, intimidating, coercing or directing any violence towards plaintiff, its property, its employees or servants.
A second question for determination on the appeal pertains to paragraph 2 of the injunction order. It decrees "That the defendants, and each of them, their servants, agents and employees, be and they are hereby enjoined and restrained (under Section 481.09(3), F.S.A.) in the absence of any authorizing vote of the majority of the plaintiff's employees from resuming, continuing or repeating the acts complained of in the bill of complaint, or any other acts inviting, inducing, signalling or advertising a strike or cessation of work at plaintiff's place of business."
The rule obtains that in an injunction proceeding the acts or things enjoined should be specified in the decree with such reasonable definiteness and certainty, considering their nature and character, that a defendant bound by the decree may readily know what he must refrain from doing without the matter being left to speculation and conjecture. Palm Corporation v. Walters,148 Fla. 527, 4 So.2d 696; Henderson v. Coleman, 150 Fla. 185, 7 So.2d 117. The rule is, also, that an injunction order should never be broader than is necessary to secure to the injured party the full relief warranted by the particular facts of the case without injustice to his adversary. Seaboard Rendering Co. v. Conlon, 152 Fla. 723, 12 So.2d 882. Generally speaking, an injunctive order which permanently restrains a defendant "from resuming, continuing or repeating the acts complained of in the bill of complaint", without particularization of the specific acts enjoined, will be held to violate the principles stated; especially where the bill charges the commission of many different and varied acts and activities some of which may be perfectly permissible and proper. See Northwestern Pac. R. Co. v. Lumber Sawmill Workers Union, 31 Cal.2d 441, 189 P.2d 277. Paragraph 2 of the decree appealed from is clearly subject to modification or elimination under the rules just stated, because of the indefinite and uncertain language in which it is framed.
But there is another reason, aside from that of indefiniteness, why this portion of the decree cannot be upheld. It will be noted that Paragraph 2 of the decree enjoins the defendants, their servants, agents and employees from engaging in any of the acts complained of in the bill of complaint "or any other acts inviting, inducing, signalling or advertising a strike or cessation of work at plaintiff's place of *Page 872 
business" unless permission or authority to engage in such activities has been given by a majority vote of the employees of the plaintiff, "under Section 481.09(3), F.S.A." It is apparent that the chancellor has bottomed this particular restraining feature of the decree upon what he has assumed to be the applicability of Section 481.09 to the facts and circumstances of the case at bar.
Section 481.09(3), supra, provides that "It shall be unlawful for any person: (3) to participate in any strike, walkout, or cessation of work or continuation thereof without the same being authorized by a majority vote of the employees to be governed thereby; provided, that this shall not prohibit any person from terminating his employment of his own volition." Assuming this statute to be a valid and constitutional exercise of the state police power — a point we expressly refrain from deciding because the question is not properly before us for decision — it makes no attempt to require a majority vote of employees as a condition precedent to inviting, inducing, signalling or advertising a strike, but requires such vote only as a condition precedent to the actual act of striking itself. The statute, therefore, is not applicable under the facts of the case and should not have been made the basis for the entry of an injunction order with respect to activities not plainly within its terms.
With this statute out of the way, the question on the issue is whether, without consideration of the statute, that portion of the decree enjoining the defendants from engaging in any acts which might properly be considered as tending to invite, induce, signal or advertise a strike at plaintiff's place of business can be sustained on any grounds. On this point it is our view that if the acts or activities of the defendant with respect to inviting, inducing, signalling or advertising a strike take place at or in such close proximity to the plaintiff's place of business as to be or become in effect an integral part of the program of unlawful picketing which has been found by the chancellor to be enjoinable because set in a background of threats, fear, coercion, intimidation, force and violence, they, too, may be enjoined because forming an integral part of the overall plan, scheme or design to coerce the plaintiff through threats, fear, intimidation, force, and violence to accede to the demands of the union and its organizers. See Meadowmoor Dairies v. Milkwagon Drivers Union, 371 Ill. 377, 21 N.E.2d 308, 312 U.S. 287, 61 S.Ct. 552, 85 L.Ed. 836, 132 A.L.R. 1200. However, if in peaceable manner or by peaceable methods and means away from the scene of the difficulty the union invites or attempts to induce the employees of the plaintiff company to join their union or to strike to enforce legitimate demands for higher wages or better hours or conditions of labor such acts would not be enjoinable for they would fall within the ambit of permissible labor activities protected by the State and Federal Constitutions. See Senn v. Tile Layers Union, 301 U.S. 468, 57 S.Ct. 857, 81 L.Ed. 1229; Thornhill v. Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093; American Federation of Labor v. Swing, 312 U.S. 321, 61 S.Ct. 568, 85 L.Ed. 855.
As to that portion of paragraph 2 of the decree which enjoins the defendants, their servants, agents and employees from "signalling or advertising" a strike or cessation of work at plaintiff's place of business, an additional word seems necessary. As we construe this particular portion of the decree, it would constitute a violation of its provisions for the union or its representatives to make any comment through the press, over the radio, or by other means, of the existence of a strike or related labor difficulty at plaintiff's place of business, or to attempt by such public information media to bring their cause to the forum of public opinion or to invite, induce, or persuade the employees at the plaintiff's plant to strike or to demand better hours, wages or working conditions from their employer.
The evidence in the record plainly shows the existence of a "labor dispute" between the contending parties. See Whitehead v. Miami Laundry Company, Fla., 36 So.2d 382; American Federation of Labor v. Swing, 312 U.S. 321, 61 S.Ct. 568, 85 L.Ed. 855; Cafeteria Employees *Page 873 
Union v. Angelos, 320 U.S. 293, 64 S.Ct. 126, 88 L.Ed. 58; New Negro Alliance v. Sanitary Grocery, 303 U.S. 552, 58 S.Ct. 703, 82 L.Ed. 1012. In the light of this evidence we know of no lawful authority under which a court of equity may proceed to enjoin a free discussion of the facts and the circumstances surrounding such labor difficulties, even though the things said may prove to be unfavorable to the industrial or business establishment toward which the statements are directed.
Moreover, even had the evidence been insufficient to establish the existence of a bona fide "labor dispute" between the parties, any acts of the defendants in "signalling or advertising" the existence of a strike or of supposed grievances against the City Laundry, through the media of the press, radio or other public information service, would not be enjoinable, except under the peculiar conditions dealt with in one of the preceding paragraphs, where the acts take place at the scene of the controversy. Section 13 of the Declaration of Rights, Constitution of Florida, declares that "every person may fully speak and write his sentiments on all subjects being responsible for the abuse of that right * * *." In the absence of an express situation plainly requiring reasonable public regulation in the interest of human life and safety, the right may not be denied or abridged. See Stephens v. Stickel, 146 Fla. 104, 200 So. 396.
Without such a situation plainly existing, a decree that attempts to condition the right of any person to express his views fully with respect to a labor difficulty or dispute by any form of publication unattended by violence, force, coercion or other unlawful or oppressive conduct, or to make the expression of the right dependent upon the existence of a "labor dispute" or "strike" in which such person must have a directed interest, runs counter to the Constitution. The fact that statements made under such circumstances may prove, after publication, to be in fact untruthful will not create an exception to the rule stated. Where, as in this State, a party is amenable to suit — as is a labor organization, Sec. 481.11, Florida Statutes, 1941, F.S.A. — and such party is made accountable under the fundamental law for an abuse of the right of free expression, a court of equity will not enjoin the commission of a threatened libel or slander; for the imposition of judicial restraints in such a case would clearly amount to prior censorship, a basic evil denounced by both the Federal and State constitutions. An action at law will ordinarily provide a full, adequate and complete remedy in such cases; particularly where no breach of trust or contract appears, or where no continuing irreparable injury not compensable in a court of law is shown. See Pomeroy's Equity Jurisprudence, 5th Ed. Vol. 4, p. 969, Sec. 1358; 28 Am.Jur. 312, Injunction, Sec. 119; 31 Am.Jur. 1003, Labor, Sec. 343; Compare Northwestern Pac. R. Co. v. Lumber Sawmill Workers Union, 31 Cal.2d 441, 189 P.2d 277.
The decree appealed from is affirmed, except as to Paragraph 2 thereof which should be deleted from the decree or modified to conform to the evidence and the principles herein stated.
The cause is remanded with directions that an appropriate decree be entered in conformance with this opinion.
It is so ordered.
ADAMS, C.J., and TERRELL and THOMAS, JJ., concur.
HOBSON, J., agrees to the conclusion.
CHAPMAN and BARNS, JJ., think the decree appealed from should be affirmed. *Page 874