HENDRY, Judge.
This appeal was taken by the defendant below from a permanent injunction entered by the Circuit Court of Dade County.[1] The appellant is a labor organization composed of persons who perform the labor of loading and unloading ships in Miami, Florida; the appellees are both engaged in the business of owning and operating cruise ships which transport persons from Port Everglades and Miami to various points of interest in the Carribean and West Indies area. The ships are of foreign registry, owned by Liberian and Panamanian corporations. It must also be noted that none of the members in the appellant labor union are employed to perform any work in connection with the operation of the cruise ships involved herein; moreover, the union itself does not represent any of the employees who work on the ships.
In May of 1966, the appellant established a picket line on the public docks of Miami, adjacent to the berths where the ships operated by the appellees were being loaded and unloaded. Some of the appellant’s members carried picket signs and placards; others distributed handbills to passengers *53 who were embarking or disembarking from the ships.[2]
Thereafter, appellees instigated this action to enjoin the labor union from picketing and distributing the handbills in question. At the trial court hearing, testimony was taken which tended to show the following: (1) that the union was concerned with safety conditions aboard the two foreign vessels; and (2) that the union was attempting to inform the public that the American residents who were working on the cruise ships were being paid substandard wages. The trial court first determined that it had jurisdiction in the matter, and further, that such jurisdiction was not preempted by the National Labor Relations Board since no labor dispute existed. The court next decreed its order which temporarily restrained the appellants from their activities, setting forth the court’s findings and the provisions of the injunction, supra, note 1. An interlocutory appeal was taken by the appellants which tested the question of whether or not the circuit court did, in fact, have jurisdiction over the dispute. We answered, in International Longshoremen’s Association, Local 1416, AFL-CIO v. Ariadne Shipping Company, Ltd., Fla.App.1967, 195 So.2d 238, that it did have *54 jurisdiction and could properly entertain the action. Thereafter, based on our affirmation of the jurisdictional issue, the circuit court changed the nature of its order to that of a permanent injunction.
The permanent injunction was specifically designed to counter the harmful effects of the appellant’s false accusations regarding the unsafeness of the ships. Furthermore, the injunction also embodied the court’s finding that no real dispute over wages really existed, and therefore, publicizing accusations as to that grievance was also forbidden. Thus, wé affirm the order’s first three provisions.
However, in framing a proper remedy for these actions, the trial court caused one section of the order to b.e too broad, i. e., Provision Four. We therefore find merit in appellant’s contention that the precise wording of this particular provision does in fact put the union in jeopardy as to its rights and obligations for any future activity. A succinct statement which summarizes the Florida holding in cases of injunctions which are too broad appears in Florida Peach Orchards, Inc. v. State, Fla.App.1966, 190 So.2d 796:
“An injunctive order, should never be broader than is necessary to secure to the injured party, without injustice to the adversary, relief warranted by the circumstances of the particular case. Moore v. City Dry Cleaners and Laundry, Fla. 1949,41 So.2d 865; and Seaboard Rendering Co. v. Conlon, 1942, 152 Fla. 723, 12 So.2d 882. An injunctive order should be adequately particularized, especially where some activities may be permissible and proper. Moore v. City Dry Cleaners & Laundry, supra. Such an order should be confined within reasonable limitations and phrased in such language that it can with definiteness be complied with, and one against whom the order is directed should not be left in doubt as to what he is required to do. Pizio v. Babcock, Fla.1954, 76 So.2d 654.” Id. at 798.
A final point raised by the appellant questions the correctness of the court’s order which granted appellee’s motion to dissolve the surety bond and discharge the surety for the injunction order. We dealt more fully with that question in International Longshoremen’s Ass’n, Local 1416, AFL-CIO v. Eastern Steamship Lines, Inc., Fla.App.1968, 206 So.2d 473, but reiterate here that such order was in error since it purported to preempt all of the appellant’s rights against the surety bond before an ultimate determination of the injunction’s correctness had been made.
As to the rest of the permanent restraining order, we find no error. Therefore, the order appealed from is affirmed in part and reversed in part.

. “Further ORDERED, ADJUDGED and DECREED that the National Labor Relations Board has no jurisdiction in this cause; that there is no labor dispute; and that this Court has jurisdiction in this case.
“Further ORDERED, ADJUDGED and DECREED that the Defendant’s actions are in violation of Florida Law; that Plaintiffs are suffering and will continue, to suffer irreparable injury unless enjoined; it is therefore “ORDERED that pending final Hearing in this matter Defendant, its officers, agents, allies, confederates and attorneys are enjoined and restrained from:
“1. — Picketing and patrolling, with signs and placards stating, alleging or inferring that Plaintiffs’ vessels are unsafe;
“2. — Distributing literature, handbills or leaflets stating, alleging or inferring that Plaintiffs’ vessels are unsafe;
“3. — Picketing or patrolling with signs or placards indicating or inferring that a labor dispute exists between Defendant and Plaintiffs, by any statement, legend or language alleging Plaintiffs .pay their employees substandard wages;
“4. — By any manner or by any means, including picketing or the distribution of handbills, inducing or attempting to induce customers and potential customers of Plaintiffs to cease doing business with Plaintiffs.”
* * * * *

. (Partial text of handbill:)
“WARNING!”
“IS YOUR CRUISE SHIP A FLOATING DEATH TRAP?”
“PAN A SUB-STANDARD FOREIGN FLAG CRUISE SHIP TORN YOUR HOLIDAY INTO A HOLOCAUST?”
“You, I am sure, are aware of the old adage, that experience is the best teacher. Yet, thousands of unsuspecting Americans continue to place their lives in jeopardy every day on cruises aboard foreign flag floating fire-traps. The sinking of the Yarmouth Castle was an ‘experience’ of which all Americans should take heed, as to the unsafe conditions existing today in foreign cruise ships. The Yarmouth Castle flew under a Panamanian flag and when it sank, 90 lives were lost.
“What can passengers of these so-called ‘luxurious’ cruise ships like the ‘Yarmouth Castle’ do to protect themselves? The answer is — know your ship. All ships sailing out of U. S. ports are inspected by the IT. S. Coast Guard. The U. S. Coast Guard can enforce IT. S. Safety standards only on IT. S. ships. Ships under foreign flags are subject to far less stringent regulations than are those under U. S. flags. There is a vast difference in the safety regulations which apply to ships of different countries — and the difference can be a matter of life or death. The strictest safety regulations of all are those of the United States. Yet, despite the fact that a majority of all the cruise ships that leave the ports of Miami and other United States ports, are American owned, they carry a foreign flag. Why is this? The answer is simple, in that in operating under a ‘flag of convenience’ offered by small foreign countries such as Liberia and Panama, whose safety standards are minimal, cruise lines then can ignore construction standards, the equipment, the age limits, the regular inspection, overhaul requirements and other safety regulations which U. S. law sets for all our ships.”

(Text of placards:)
“ARIADNE
REFUSE
To Maintain Adequate Safety Conditions FOR
PASSENGERS & EMPLOYEES
International Longshoremen’s Association — Local 1416 Miami, Fla.”
“BAHAMA STAR REFUSE
To Maintain Adequate Safety Conditions FOR
PASSENGERS & EMPLOYEES
International Longshoremen’s Association — Local 1416 Miami, Fla.”